### KNOX v. LYARELS et al.

#### No. 2172.

Court of Civil Appeals of Texas. Eastland.

Sept. 26, 1941.

Rehearing Denied Oct. 31, 1941.

Goggans & Ritchie, of Dallas, for appellant.

W. J. Durham, of Sherman, for appellees.

FUNDERBURK, Justice.

F. C. A. Lyarels et al., in addition to other capacities, brought this suit as Trustees of five local lodges in Dallas against Will G. Knox, Receiver of the Grand Lodge of Colored Knights of Pythias of Texas, seeking primarily to recover title and possession of certain described property in Dallas, Texas, upon which is situated the State Pythian Temple built by said Grand Lodge of Colored Knights of Pythias of Texas. Through their officers and trustees duly authorized, five Knights of Pythias Lodges (colored) on May 25, 1911, conveyed a certain lot of land to the said Grand Lodge by general warranty deed. Contemporaneously the parties to the deed executed a separate written agreement showing, among other things, the real consideration for said conveyance. By the agreement, which was duly acknowledged for record, it appears that in addition to the conveyance of the land the grantors executed to the grantee several $400 notes, aggregating $2,000 as a contribution to the cost of erecting said Temple. The real consideration for the deed and notes was, in substance, recited in the agreement as follows: The Grand Lodge promised to construct and complete within four years upon the land conveyed, or upon other suitable site, a State Pythian Temple to cost not less than $20,000 and to properly furnish and equip at its own expense a lodge room therein for said local lodges and certain "Courts of Calanthe * * * with chairs, stations, seating apparatus, linoleum, water cooler, cuspidors, electric lights, windows frosted where necessary, toilet paper, etc." Further, the instrument declared that said lodge "has granted and conveyed and does by these presents grant and convey unto the said local lodges composing said Second Parties hereto and unto the following named Courts of Calanthe, to-wit, Pride of Dallas No. 125, Leading Star No. 145, Western Beauty No. 6, Queen of Thelma No. 1 and Golden Rule No. 171, each an easement right in and to the use of proper and sufficient lodge room in said State Pythian Temple to be constructed as herein indicated, all of said lodges composing said Second Parties and said Courts of Calanthe to have the use of one and the same lodge room." The obligation of the Grand Lodge, except as to local lodges, if any, failing to pay their several $400 notes, was "to deliver over to said Parties of the Second Part and said Courts of Calanthe said lodge room in said Temple on the date of the completion thereof for their permanent use and meeting place, so long as said Grand Lodge remains located in the City of Dallas and remains

the owner of said property and building." The agreement provided that the Grand Lodge might sell the lot, in which event it promised to re-invest the proceeds in another "lot or lots equally well located in the City and County of Dallas, Texas, and thereupon erect the aforesaid State Pythian Temple within the time above indicated in accordance with the provisions and conditions of this contract."

With further reference to the lodge room for said local lodges, the agreement provided "that the aforesaid Temple and building to be erected as herein indicated, or at least a part thereof, is to be used as the home or headquarters of the Grand Lodge of Colored Knights of Pythias of Texas, and that the respective local lodges constituting the Second Parties hereto and said Courts of Calanthe are to be furnished with proper and reasonable lodge room and place of meeting in said building free of charge, as aforesaid; and in the event said Grand Lodge removes from the City of Dallas or for any reason ceases to use said State Pythian Temple for lodge purposes, or sells the same, and in any such event, it hereby agrees to refund to the aforesaid lodges composing the Second Parties hereto the respective amounts of money by each paid to said Grand Lodge on said notes aforesaid, and to cancel and return said notes to the makers thereof, and also to pay in addition thereto each of said local lodges * * in equal portions an amount equal to the value of the above described lot this day conveyed to said Party of the First Part at the time of its sale by the said Grand Lodge."

Relative to the nature of the estate conveyed by the deed, said agreement provided "that nothing herein contained shall be construed to in any wise interfere or affect the perfect unconditional right of the Party of the First Part hereto to execute a good and sufficient general warranty deed conveying the fee simple title of the above described lot this day conveyed to it by said Second Parties to any purchaser or purchasers to whom it may elect to sell same as aforesaid; and the purchaser or purchasers thereof shall in no wise be required, obligated or bound to look to the application of the proceeds of the sale of said lot, or to follow the purchase money paid to said Party of the First Part for said lot to see that the same be reinvested in another lot or tract of land, it being understood that the deed this day executed and delivered to said Party of the First Part by the said Second Parties hereto conveys a fee simple title to said land free from any obligation and encumbrances whatsoever. The said Grand Lodge of Colored Knights of Pythias further agrees that in the event it sells or demolishes the old hall before it is ready to commence the construction of the proposed temple to provide a meeting place for said local lodges free of charge until the beginning of the erection of the said Pythian Temple."

Before beginning the construction of the Temple, the Grand Lodge sold the land conveyed to it by said local lodges for $17,500 and reinvested the proceeds in another lot upon which the Temple was built and said lodge room for the local lodges furnished as provided by the terms of the contract.

The Grand Lodge having become insolvent, its charter was, on or about November 22, 1939, adjudged to be forfeited, and Will G. Knox, the defendant, was appointed the receiver. Since said date, the Temple building has not been used for lodge purposes of the Grand Lodge.

The plaintiffs' petition is very lengthy (28 pages of the transcript, exclusive of exhibits) and, other than asserting claim to the land on the theory that the Grand Lodge had held it in trust for said local lodges which was terminated by the forfeiture of the charter of the Grand Lodge, is difficult to construe. The trial court rendered judgment on the theory that the hereinbefore described agreement made, as said before, at the time the deed was executed constituted a trust agreement having the effect under the facts stated of rendering the Grand Lodge liable to pay the local lodges the $400 each represented by said notes in addition to $12,000 and $6,000 subsequently contributed to the construction of said Temple, the same as the amount represented by said notes, plus also the $17,500 for which the land described in the deed was sold and proceeds used in the purchase of the lot in suit. Further, it appears that the agreement, held to create a trust, had the effect, as also held, of an express equitable lien on the property to secure payment of the total sum due, aggregating $37,500. The judgment so declared and provided a foreclosure of said lien.

In our opinion, the written agreement made contemporaneously with the execution of said deed, given by the local lodges to the Grand Lodge and alleged by

the plaintiffs to be a trust agreement was not a trust agreement and did not have the effect of impressing a trust upon the land conveyed, or upon the land in suit (purchased with the proceeds of the sale of the land conveyed) or upon the money paid upon the several $400 notes executed by the local lodges to the Grand Lodge.

Unless, as a matter of law, an express trust in property and an equitable lien upon property are one and the same thing—a proposition to which we do not agree—then plaintiffs did not allege any facts to show the existence of an equitable lien. In their voluminous petition the only mention of an equitable lien is in the prayer "that they have judgment against the defendant * * for the sum of $52,000, that said $52,000 be declared to be a trust and *lien* upon and against the property hereinbefore described and that such *lien* be foreclosed" etc. (Italics ours.)

■ There being no allegations independently of the allegations of a trust to show an equitable lien it follows naturally from our conclusion that no trust was shown, that the judgment cannot be sustained insofar, at least, as it decreed and foreclosed an equitable lien. This is obviously true if for no other reason because of the want of any pleading to support it.

■ If, as we have concluded, the written agreement was not a trust agreement, then more certainly no trust was created by the subsequent parol agreements under which plaintiffs paid at one time $12,000 and at another time $6,000 as further contributions to the construction of the Temple. The essential terms of such subsequent oral agreements were the same as the written agreement; but there was this difference: When the subsequent oral agreements were made the title to the land had already vested. It should require the citation of no authority to support the proposition that an express trust upon land conveyed by deed purporting to convey an estate in fee simple cannot be shown by evidence of a parol agreement made subsequent to the time the title vested. If these conclusions are warranted it follows that the judgment cannot be sustained and must be reversed.

■ The alleged trust agreement as applied to the facts seems to us to be ambiguous and requires construction in order to determine the rights of the parties thereunder. In one part the agreement declares the deed conveys fee simple title, free and clear of all encumbrances, as considered alone it certainly purports to do. Another part purports to constitute a reservation of an interest in the land in the nature of a permanent easement, subject to a specified limitation, namely, "so long as said Grand Lodge remains located in the City of Dallas and remains the owner of said property and building." Literally these provisions would appear to conflict, but we believe that consistent with the rules of construction they are reconcilable. The reservation of a lodge room or meeting place could not become effective until and unless the Temple was built. The property that passed by the deed from the local lodges to the Grand Lodge having no Temple building upon it at the time clearly was not at that time encumbered with an outstanding interest reserved to the local lodges. In a sense it was, therefore, true that at the time of passing the title the land was conveyed free of all existing encumbrances and the estate was one in fee simple. The acknowledgment of the parties expressed in the agreement to the effect that a fee simple title was passed free and clear of encumbrances is susceptible to the construction that it had reference to the land conveyed prior to such time as the Temple building should be constructed whether on that tract or upon another purchased with the proceeds of its sale. To harmonize all provisions of the agreement it is necessary to construe said provision as intended merely to enable the Grand Lodge to make sale of the lot before beginning the construction of the Temple and pass full title to the purchaser by its conveyance. In our opinion, it did not have reference to the property or property purchased with the proceeds of its sale after the construction of the Temple. The intention is manifest that upon the completion of the Temple, either upon the land conveyed or upon land purchased with proceeds of its sale, then would come into effect in favor of the local lodges the right to the permanent use of a lodge room which, in our opinion, clearly constituted an interest and easement in the land, the term of which was limited only as aforesaid. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1020, 80 S.W.2d 741; Xray Gas Co. v. Lone Star Gas Co., Tex.Civ.App., 139 S.W.2d 142 and authorities there cited.

■ What were the rights of the parties after the construction of the Temple was completed and a lodge room therein provid-

ed for the local lodges in accordance with the agreement? As said, the local lodges had an interest in the land. Such interest was to continue "so long as said Grand Lodge remains located in the City of Dallas and remains the owner of said property and building." This limitation—clearly such, we think—nevertheless requires construction to determine its precise nature, and to conform it to other provisions of the contract. In connection with it must be considered another provision, namely, " * * * in the event said Grand Lodge removes from the City of Dallas or for any reason ceases to use said State Pythian Temple for lodge purposes, or sells the same and in any such event it hereby agrees to refund to the aforesaid lodges composing the second parties hereto, the respective amounts of money by each paid to said Grand Lodge on said notes aforesaid, and to cancel and return said notes to the makers thereof, and also to pay in addition thereto each of said local lodges constituting said second parties, in equal portions an amount equal to the value of the above described lot this day conveyed to said party of the first part, at the time of its sale by the said Grand Lodge." This provision in itself and by its context, insofar as it refers to a sale of the property, means the sale of said property after the completion of the Temple. It makes reasonably clear, we think, that the provision in the limitation, namely: "So long as said Grand Lodge remains located in the City of Dallas" means until by change of purpose or policy the Grand Lodge should move its headquarters to some other place than the city of Dallas. The last quoted provision considered literally seems to apply to removal from Dallas, ceasing to use the State Pythian Temple for lodge purposes for any reason, and selling same, as things upon a parity one with another. But such construction seems to us to be inadmissible. The last provision indicates an intention that the promised refund and payment should be made by way of compensation to the local lodges for the loss of their rights to use the lodge room, but if so, even though the lodge removed its headquarters from Dallas, or, for other reasons, ceased to use the building for lodge purposes, but did not sell same, left the total amount of promised payments indeterminable. A part of the promised payment was to be the value of the property at the time of the sale which, of course, could not be determined in the absence of any sale. It seems to us the word "or" introducing the provision "or sells the same" should be construed to mean "and." The intention is clear that so long as the Grand Lodge owns the property the easement would continue. To give effect to such intention it is necessary and proper to construe the connective "or" as "and." 17 C.J.S., Contracts, p. 722, § 304; 13 C.J. 532, § 489.

But whether this be the correct view or not, in our opinion the last mentioned provision was not intended to vary or affect the limitation. There would be no necessary inconsistency between the prescribed limitation upon the easement of the local lodges to occupy and use the lodge room, "so long as the Grand Lodge remains located in the City of Dallas and remains the owner of said property and building" and the obligation to make the stipulated refunds and payments in the nature of a penalty or liquidated damages for moving headquarters from the City of Dallas, ceasing to use the property for said lodge purposes or selling same.

We think the sale referred to in both provisions means a voluntary sale by the Grand Lodge. It is unreasonable that as compensation to the local lodges for the loss of their lodge room the parties would have provided for a payment which could not legally be made if insolvency and ceasing to use the property for that reason only was intended to terminate the easement of the local lodges. In such case, the Grand Lodge would be powerless to make the payments stipulated and the parties were charged with knowledge of that fact.

It seems to us the appellees mistook their remedy. Anyway, they were not entitled to a money judgment and foreclosure of a lien on the property under the pleadings and evidence.

We believe that so long as the property remains unsold the local lodges have their easement and right to the lodge room provided for them. The pleadings imply there has been no sale of the property. The pleadings do not show that the plaintiffs have been denied their right to use the lodgeroom.

We do not hold that the receiver may not be properly authorized to sell the property, but since, in our opinion, a voluntary sale by the Grand Lodge was the measure of the parties' rights, as they fixed such

rights by the contract, it may be that the local lodges have the right by showing the insolvency to have judgment under proper pleadings and by showing a threat to violate their rights to require any such sale to be made subject to their rights to the use of their lodge room or upon condition of making the payments provided in the agreement.

It is our conclusion that the judgment should be reversed and the cause remanded which is accordingly so ordered.