## ACKERMAN v. PRIDE OF WEST LODGE NO. 12 et al.
### No. 4571.

Court of Civil Appeals of Texas. El Paso.

May 26, 1948.

Rehearing Denied June 16, 1948.

Billy B. Goldberg, of Houston, and Biggs & Roberts and Fowler Roberts, all of Dallas, for appellant.

W. J. Durham, of Dallas, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Dallas County, 14th Judicial District.

Appellant's statement of the nature and result of the suit is admirable for its clarity and brevity. Except for references to the record we adopt it in its entirety:

"Suit against appellant was filed by Pride of West Lodge No. 12, Algiers Lodge No. 44, Emanuel Lodge No. 145, St. Char-

les Lodge No. 21 and St. Luke Lodge No. 1, which were alleged to be private benevolent associations, for damages for alleged destruction of an easement and right to use the third floor of a building which had been purchased by defendant from Will G. Knox, Receiver for the Grand Lodge of Colored Knights of Pythias of Texas, for conversion of certain personal property and in the alternative for an injunction restraining defendant from interference with their use of said part of the building.

"The case was submitted to a jury upon special issues. Upon the return of the jury verdict defendant filed his Motion for Judgment Non Obstante Veredicto, and plaintiffs filed their Motion for Judgment on the Verdict. The court overruled defendant's Motion for Judgment Non Obstante Veredicto and rendered judgment for plaintiffs in the sum of $16,557.00. Defendant filed his Motion for New Trial and same was overruled by the court. From this judgment of the court defendant has perfected this appeal."

We will add that only two special issues were submitted, the answers to which form the basis of the judgment. They are:

"Special Issue No. 1: What do you find from a preponderance of the evidence was the reasonable cash market value in Dallas County, in July, 1945, of the furniture and fixtures located on the third floor of the Pythian Temple in Dallas, Texas?

"Answer in dollars, if any, and cents, if any.

"Answer: $1,557.00.

"Special Issue No. 2: What do you find from a preponderance of the evidence. is the reasonable value to the plaintiffs, if paid in cash, of the use of the Lodge rooms formerly occupied by the plaintiffs in the Pythian Temple during the remainder of the life of said building?

"Answer in dollars, if any, and cents, if any.

"Answer: $16,500.00."

By appropriate points appellant assigns error in the action of the court in overruling his motion for judgment non obstante veredicto and in rendering judgment on the verdict because the evidence shows that appellees had no interest in the property in controversy.

Appellees, to support their claim to an easement and right to use the third floor of the building involved, relied on a contract entered into between the Grand Lodge of Colored Knights of Pythias of Texas and the five lodges above mentioned, all being local lodges of the Colored Knights of Pythias, dated May 25, 1911, and an amended judgment of the 44th Judicial District Court of Dallas County entered June 27, 1945, effective as of date July 26, 1943, in cause No. 46,964-A, styled F. C. A. Lyarels v. Will G. Knox, Receiver of the Grand Lodge of Colored Knights of Pythias of Texas, et al., in which the five named local lodges were plaintiffs and the named receiver and others were defendants, which adjudicated to plaintiffs against the receiver an easement and right to use three rooms located on the third floor of the building particularly described, with rights of ingress and egress thereto.

Appellant acquired his title to the building in question by purchase at a receiver's sale from Will G. Knox, receiver of the Grand Lodge of Colored Knights of Pythias of Texas, confirmed by an order of the District Court of Robertson County, 85th Judicial District, on September 11, 1944, in a suit filed in that court styled Mahaley Beverly, a widow, v. Grand Lodge Colored Knights of Pythias of Texas. It appears from the receiver's application to sell, the order of sale, the receiver's report of sale and the order approving and confirming the sale that appellant acquired the entire interest of the Grand Lodge, Colored Knights of Pythias of Texas, in the property, and took it subject to any valid claims of appellees.

The contract referred to is discussed and its pertinent provisions stated in Knox v. Lyarels, 155 S.W.2d 435, 437 (W.R.W.M.) in an opinion by the Eastland Court of Civil Appeals. However, in order that this opinion may be complete in itself we shall make our own statement of the pertinent provisions of the contract. In it the Grand Lodge of the Colored Knights of Pythias of Texas is styled "Party of the First Part" and the five local lodges "Parties of the

Second Part." In consideration of the execution and delivery by parties of second part of a general warranty deed conveying in fee simple title to party of the first part a certain lot in the City of Dallas, particularly described (not the property involved in this suit) and a contribution by each of the second parties of $400 to be evidenced by notes of even date executed by said local lodges, payable to party of the first part on or before four years from date, towards the construction of a State Pythian Temple in the City of Dallas, party of the first part "does grant and convey unto said local lodges comprising said second parties hereto and unto the following named Courts of Calanthe (here follow the names of five other lodges) each an easement right in and to the use of proper and sufficient lodge room in said State Pythian Temple to be constructed as herein indicated, all of said lodges composing said second parties, and said Courts of Calanthe to have the use of one and the same lodge room." It was stipulated that any lodge failing or refusing to pay the agreed sums should forfeit its right to a meeting place in the Pythian Temple. Party of the first part agreed to build and complete the Temple, to cost not less than $20,000 upon the lot conveyed or such other lot in the city of Dallas equally well located as might be selected and purchased by it, same to be completed and ready for use within four years from date of the contract, and "to deliver over to said parties of the second part and said Courts of Calanthe said lodge room in said temple on the date of the completion thereof for their permanent use and meeting place so long as said Grand Lodge remains located in the City of Dallas and remains the owner of said property and building."

The contract contains the following paragraph, which we reproduce: "It is further understood and mutually agreed by and between the parties hereto that the aforesaid temple and building to be erected as herein indicated, or at least a part thereof, is to be used as the home or headquarters of the Grand Lodge of Colored Knights of Pythias of Texas, and that the respective local lodges constituting the second parties

hereto and said Courts of Calanthe are to be furnished with proper and reasonable lodge room and place of meeting in said building free of charge, as aforesaid; and in the event said Grand Lodge removes from the City of Dallas or for any reason ceases to use said State Pythian Temple for Lodge purposes, or sells the same, then and in any such event it hereby agrees to refund to the aforesaid lodges composing the second parties hereto, the respective amounts of money by each paid to said Grand Lodge on said notes aforesaid, and to cancel and return said notes to the makers thereof, and also to pay in addition thereto to each of said local lodges constituting said second parties, in equal portions an amount equal to the value of the above described lot this day conveyed to said party of the first part, at the time of its sale by the said Grand Lodge."

In Knox v. Lyarels, supra, the Eastland Court of Civil Appeals held that the contract did not constitute a trust agreement having the effect of impressing the property involved in this suit with a trust in favor of the local lodges as against the receiver, and as there were no facts alleged to show an equitable lien against the property, reversed and remanded a judgment of the trial court which established and foreclosed such lien. The court reached the conclusion that under the terms of the contract, upon the completion of the temple there came into effect in favor of the local lodges "the right to the permanent use of a lodge room which * * * constituted an interest and easement in the land, the term of which was limited only," as above indicated, i. e., "so long as said Grand Lodge remains located in the City of Dallas and remains the owner of said property and building." The court then discussed the question of whether such "interest and easement" had terminated because of the insolvency of the Grand Lodge, the forfeiture of its charter and the appointment of the Receiver, and concluded that the interest and easement had not terminated.

■ The Court construed the reproduced paragraph to obligate the Grand Lodge in the event it sold the temple, to pay to the

local lodges an amount equal to the value of the property at the time of sale, and concluded that since this value could not be determined in the absence of a sale, and since in case of insolvency the Grand Lodge could not perform its obligations under the above paragraph and legally make the payments therein provided to the local lodges as compensation for the loss of their lodge room, the sale referred to meant a voluntary sale. It construed the limitation above quoted, when considered with this paragraph, to necessitate a voluntary sale in order to terminate the interest of the local lodges in the property. We are not in accord with this construction, although we do agree that a voluntary sale was contemplated by the quoted paragraph. Of course the amount which the Grand Lodge was obligated to pay to the local lodges could not be determined in the absence of a sale if the temple had been built on the lot conveyed by the local lodges and it was contemplated that they be paid the value of the lot with the temple on it at the time of its sale by the Grand Lodge. That such situation was contemplated and such an obligation imposed by the paragraph referred to seems unreasonable. The temple was to cost $20,000, of which $2,000 was to be contributed by the local lodges, as evidenced by their notes. The amounts paid on these notes were to be refunded and the notes cancelled and in addition thereto, under such construction the local lodges would have received as compensation for the loss of their lodge room the value of the entire building and of the lot which they had conveyed at the time it was sold by the Grand Lodge. On the other hand, if the quoted paragraph is applicable only if the Temple were built on property other than the lot conveyed to the Grand Lodge by the local lodges which had been purchased in part by the proceeds of a sale by the Grand Lodge of the lot conveyed to it by the local lodges; no sale of the Temple was necessary to determine the value of the lot conveyed at the time of its sale and to fix the obligation of the Grand Lodge in the event it removed from the city of Dallas or for any reason ceased to use the Temple for lodge purposes, and the local lodges' interest in the building was terminated by either of such contingencies. That the obligation of the Grand Lodge was fixed by the quoted paragraph only in the latter situation seems a more reasonable construction. However, the language: "In the event said Grand Lodge * * * sells the same" clearly indicates a voluntary sale by the Grand Lodge. It does not follow that this requires or warrants a construction of the limitation which would necessitate a voluntary sale of the property in order to terminate the interest of the local lodges therein. The language employed is unambiguous; it does not expressly refer to any sale. As above indicated, the obligation of the Grand Lodge to the local lodges could have been definitely determined under the other provision of the limitation, i. e., "So long as said Grand Lodge remains located in the City of Dallas," construed in connection with the quoted paragraph of the contract, absent any sale of the Temple. True, a sale either voluntary or judicial is implied by the language "and remains the owner of said property and building" since by no other method could the Grand Lodge be divested of its title. That it was so divested by the receiver's sale is beyond question. Upon such divestiture by the express terms of the limitation all interest of the local lodges in the property was extinguished. What rights and remedies, if any, appellees may have had against appellant as purchaser at the receiver's sale because of the insolvency of the Grand Lodge and its inability to perform its obligations to them are immaterial. Their cause of action is grounded on obstruction or destruction of an alleged interest or easement in the property which they had not had since the Grand Lodge ceased to remain the owner of the property and building. They acquired no interest or easement in the property after the receiver's sale by virtue of the judgment of the 44th District Court of Dallas County, heretofore referred to. By its terms the judgment was effective more than a year before that sale, and as remarked by the trial judge, could not affect appellant's title. Any interest appellees might have acquired by it was extinguished by the sale. The judgment insofar as it

awards any recovery for loss of the use of the lodge rooms, is therefore erroneous.

▊ The personal property alleged to have been converted to his own use or destroyed by appellant is the furniture and fixtures located on the third floor of the Temple, the reasonable cash market value of which is inquired about in Special Issue No. 1. By the contract referred to the Grand Lodge bound itself "to properly equip and furnish at its own expense said lodge room for the use of said second parties and said Courts of Calanthe, with chairs, stations, seating apparatus, linoleum, water cooler, cuspidors, electric lights and electric fans, windows frosted where necessary, toilet paper, etc., it being understood however that if said furniture and furnishings be broken or removed or destroyed by said local lodges or either of them, then the same shall be replaced by such lodge or lodges by which the same were removed, broken or destroyed." Appellant's general denial put in issue the ownership of this property. The witness Ira Robertson testified that he had made a list of the furniture and fixtures on the third floor of the building just previous to the time appellees were barred from the building, (July 1, 1945) and found the following property belonging to them:

"177 chairs, 6 desk chairs, 6 desks, 11 ceiling fans, 13 Chesterfields, 6 gas heaters, 5 folding chairs, 27 straight chairs, 1 davonette and 4 upholstered chairs, 3 flat-top desks, 1 radio, 5 Venetian blinds, and a pool table and a bar, and coca cola refrigerator case"; that the Grand Lodge had furnished them a place to meet but they placed their own equipment in there; he didn't know when any of the personal property was bought except that which belonged to the St. Charles Lodge, i. e., 2 chairs and a desk which they purchased about ten years ago; that the 177 chairs belonged to the five local lodges; that he did not know how old they were—a lot of them had been replaced as they became decayed; he didn't know when they were bought; they were purchased at various times; that the Venetian blinds were bought by the lodges about five or six years ago. Nick Halleck, a second hand furniture dealer, testified that he inspected the furniture and fixtures on the third floor of the building in June 1945, and priced it at $1557; that he considered that was the fair cash market value of it at that time. This evidence was sufficient to raise an issue as to the ownership of the personal property, alleged to have been converted or destroyed by appellant, as well as an issue as to its value. There is no evidence that any of such property was so attached to the building as to become a part of it. Appellant made no objection to the court's failure to submit an issue as to ownership. Appellees' ground of recovery consisted of the issue of ownership as well as that of value, and hence the issue of value was necessarily referable to such ground of recovery. Therefore, by his failure to object under Rule 279, Texas Rules Civil Procedure, appellant waived his right to jury trial on the issue of ownership and such issue will be deemed as found by the court in such manner as to support the judgment. The court rendered judgment on the findings less a remittur of $1,500 which the judgment recites appellees had filed, in the sum of $16,-557. By finding No. 2, $16,500 was the reasonable value of the use of the lodge rooms to appellees. Appellees alleged that they had been damaged only $15,000 by the destruction of their easement and rights in the building; therefore we must assume that the remittur was made in order that the judgment might conform with the pleadings, and this finding, since appellees could not recover damages for the loss of such use in excess of the damages they alleged. As we have said, any recovery for loss of such use was unwarranted. It follows that the court should have rendered judgment on finding No. 1 in view of the implied finding as to ownership of the personal property for $1,557. Accordingly, the judgment is reformed so as to award recovery in favor of appellees against appellant for $1,557 and costs, and as so reformed it is affirmed. One-half of the costs of this appeal will be taxed against each of the parties.

Reformed and affirmed.