**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**John THOMAS et al., Appellees.**

**No. 986.**

Court of Civil Appeals of Texas, Corpus Christi.

Appendix Preliminary Opinion and Order Nov. 20, 1975.

March 3, 1976.

Rehearing Denied April 22, 1976.

Russell H. McMains, Fulbright & Jawor-ski, Houston, for appellant.

Ernest H. Cannon, Riddle, Murphrey, O'Quinn & Cannon, Houston, for appellees.

## OPINION

NYE, Chief Justice.

This suit arose as a result of a rear-end collision that occurred in Galveston County between a vehicle owned and operated by plaintiffs, John Thomas and Johnnie Mae Thomas, and another vehicle owned by defendant Southwestern Bell Telephone Company and operated by defendant's employee, John Cliver, Jr. After a hearing on defendant's plea of privilege (which the trial court overruled), the case proceeded to trial before a jury solely on the issues of damages. The jury found that plaintiffs had been damaged in the sum of $67,934.00. The trial court thereafter rendered judgment in favor of plaintiffs for such sum. The defendant Telephone Company has duly perfected its appeal to this Court.

This appeal consists of three separate appellate problems. The first is a consideration of a second appeal from the overruling of a plea of privilege, the first having been dismissed by this Court for lack of jurisdiction. Second is the consideration of the sufficiency of the appellate record caused by the death of the court reporter after the appeal on the merits had been perfected; and finally, the appeal on the merits of the case. The defendant brings forward some 28 points of error concerning these three problems.

■ Defendant initially attempted to appeal from the overruling of its plea of privilege under the provisions for appeal of interlocutory orders (Rule 385, T.R.C.P.), but failed to timely perfect its appeal. This Court dismissed the appeal for lack of jurisdiction. Although the defendant had previously attempted to perfect an appeal from the order overruling the plea of privilege, the defendant is not prejudiced from having the same considered in this appeal from the final judgment. *Barron v. James,* 145 Tex. 283, 198 S.W.2d 256 (Tex.Sup.1946); *Reynolds v. Groce-Wearden Co.,* 250 S.W.2d 749 (Tex.Civ.App.—San Antonio 1952, writ ref'd).

■ This brings us to the first group of points (points of error 3, 4, and 5) which concerns defendant's complaint that the trial court erred in overruling its plea of privilege to be sued in the county of its residence, when such ruling was based on Subdivision 27,[1] of Article 1995, Tex.Rev.Civ. Stat.Ann. The defendant argues that Subdivision 27 is unconstitutionally discriminatory against foreign corporations, of which the defendant company is one.

The defendant is a foreign corporation, qualified to do business in the State of Texas, with residence in Harris County. It

---

1. 27 Foreign Corporations.—Foreign corporations, private or public, joint stock companies or associations, not incorporated by the laws of this State, and doing business within this State, may be sued in any county where the cause of action or a part thereof occurred, or in any county where such company may have an agency or representative, or in the county in which the principal office of such company may be situated; or, when the defendant corporation has no agent or representative in this State, then in the county where the plaintiffs or either of them, reside.

also maintains an office and agents in Bay City, Matagorda County, Texas. The defendant's employee, John Cliver, Jr., was a resident of Ector County. The plaintiffs were residents of Harris County, Texas, and the collision which is the subject of controversy occurred in Galveston County, Texas.

The plaintiffs instituted their lawsuit in Matagorda County, Texas. Defendant subsequently filed its plea of privilege to be sued in the county of its residence, that being Harris County, Texas. The plaintiffs then filed their controverting plea alleging that venue was proper in Matagorda County, Texas, pursuant to Subdivision 27, Article 1995, because the defendant was a foreign corporation doing business within this State and the case was pending in Matagorda County in which county defendant has an agency or representative. The trial court overruled defendant's plea of privilege basing its ruling on Subdivision 27 of Article 1995 because defendant did in fact have an agent and/or representative in Matagorda County, Texas.

The defendant does not contend nor assert that plaintiffs failed to prove their right to venue in Matagorda County pursuant to Subdivision 27. In its brief, defendant asserts that the error in overruling appellant's plea of privilege under Subdivision 27 stems not from the appellees' failure to prove the necessary Subdivision 27 venue facts, but rather the unconstitutionality of Subdivision 27 because of the discriminatory treatment accorded foreign corporations under the relied upon Subdivision.

Appellant asserts that Subdivision 27 of Article 1995 is unconstitutional on two grounds: 1) it affords broader venue for actions against foreign corporations than is afforded against domestic corporations under Subdivision 23; and 2) under Subdivision 23, a plaintiff is required to prove a cause of action against a domestic corporation in order to maintain venue, whereas such is not required under Subdivision 27 solely because the defendant in the latter instance is a foreign corporation. The appellant cites two cases, those being *Fireman's Fund Insurance Company v. McDan-*

*iel,* 327 S.W.2d 358 (Tex.Civ.App.—Beaumont 1959, no writ) and *Maryland Casualty Company v. Torrez,* 359 S.W.2d 559 (Tex. Civ.App.—Eastland 1962, dism'd w. o. j.; 363 S.W.2d 235 (Tex.)).

The Supreme Court of Texas has recently held that this Subdivision is not unconstitutional. *Commercial Insurance Company of Newark, New Jersey v. Adams,* 369 S.W.2d 927 (Tex.Sup.1963). The appellant concedes that this is the law but argues that the *Adams* case should either be overruled or distinguished. The appellant asserts that the Houston Court of Civil Appeals in *Adams,* 366 S.W.2d 801 (Tex.Civ.App.—Houston 1963), aff'd 369 S.W.2d 927 (Tex.Sup. 1963) determined only that Subdivision 27 was not unconstitutional for affording wider venue against foreign corporations than domestic corporations. Appellant claims that a different argument against Subdivision 27 is that it is also unconstitutional because it does not require proof of the cause of action. However, such argument as presented by the appellant was also asserted without success in *Humble Oil & Refining Company v. Preston,* 487 S.W.2d 956 (Tex.Civ.App.—Beaumont 1972, writ dism'd). We hold that Subdivision 27 of Article 1995 is not unconstitutional.

There is a further reason why defendant's points of error relating to its plea of privilege are overruled. The defendant's plea of privilege was filed July 27, 1973, and finally disposed of July 22, 1974, about one year later. In the meantime, after the filing of defendant's plea of privilege, but prior to a ruling thereon, the trial court acted on three of the defendant's motions. It overruled defendant's motion to compel a second physical examination; it overruled defendant's motion to dismiss; and it sustained defendant's special exceptions.

The general rule in Texas is that a plea of privilege is waived if the defendant, without first insisting upon its disposition, urges a special exception. This rule applies only when judicial power is invoked on a matter and in a manner which negates a continuing intent to insist upon the plea. *Pit Construction Company v. West Texas*

*Equipment Company,* 494 S.W.2d 642 (Tex. Civ.App.—Amarillo 1973, writ dism'd); *Talbert v. Miles,* 477 S.W.2d 710 (Tex.Civ.App. —Waco 1972, no writ); 1 McDonald, Texas Civil Practice, Venue, § 4.40, p. 572, 59 Tex.Jur.2d Venue § 158. The ruling by the trial court by overruling defendant's motion to dismiss, without the defendant first insisting on the disposition of its plea of privilege, invoked the judicial power of the court in a manner inconsistent with a continuing intention to insist upon the plea. This caused a waiver of defendant's plea of privilege. *First State Bank and Trust Company of Rio Grande City v. Colpaugh,* 489 S.W.2d 675 (Tex.Civ.App.—San Antonio 1973, no writ); 1 McDonald, Texas Civil Practice, Venue § 4.40, p. 572. The defendant's points of error concerning the plea of privilege are overruled. The trial court's judgment on the plea of privilege is affirmed.

The second group of points of error (points 6, 7 and 8) concern the statement of facts which was conditionally tendered to this Court. The controversy with regard to the statement of facts arose due to the untimely and unfortunate death of Mr. Whit Waide, the official court reporter for the 130th Judicial District Court in Matagorda County, in September 1974. The facts surrounding the controversy are relatively undisputed. Even though these points of error are now moot because of the action taken by this Court and the subsequent action taken by the trial court, we believe the problem needs to be aired.

Following the trial on September 27, 1974, the appellant's attorney requested a statement of facts of all the evidence adduced in the trial from the official court reporter, Whit Waide. Mr. Waide started working on the record and had completed approximately ten to twenty pages of it when he became ill and subsequently died.

After two unsuccessful attempts to have Mr. Waide's notes transcribed by two other court reporters, the notes were tendered to and were finally transcribed by a third court reporter, Clinton Gettig. Upon receiving a copy of the Gettig transcription, appellant's attorney noted certain discrepancies and omissions. These included missing exhibits and objections which were not included in the record, misspelled words and other errors. Appellant's attorney refused to approve the same after the attorneys for both parties could not agree. Appellant's attorney then requested a hearing pursuant to Rule 377(d), T.R.C.P., which governs the matter of securing a statement of facts for appellate purpose. Subdivision (d) of Rule 377 sets out the duty of the trial court to settle differences between the parties as to whether the record truly discloses what occurred. It reads in part as follows:

"(d) . . . *If any difference arises as to whether the record truly discloses what occurred in the trial court, or if the opposing party fails to agree or to disagree within ten days after being furnished with a copy of the proposed statement of facts, the matter shall be submitted to and settled by the trial court or judge thereof and the statement of facts be by him made to conform to the truth.*" (Emphasis supplied.)

At the hearing held pursuant to the above rule, certain facts were adduced concerning the difficulty of the several court reporters in attempting to accurately transcribe the notes of Whit Waide. After the court reporter's death, his notes (completed and uncompleted) were turned over to his brother, John Waide, who was also a court reporter. On November 4, 1974, John Waide wrote a letter to appellant's attorney, Alex Guevara, Jr., in which John Waide stated "It is my opinion a successful transcript (of the notes of brother, Whit Waide) cannot be made." In further discussions between appellant's attorney and John Waide, Mr. Waide reiterated that in his opinion an honest transcription of those notes could not be done.

The notes were then tendered to another court reporter, Joylynn Walla, who, as the record reflects had had extensive experience in transcribing the notes of other court reporters. After an examination of the notes, Mrs. Walla concluded that she could not turn out a true and correct record be-

cause the deceased court reporter had an individualized style of note taking and because of the existence of certain errors in his notes that could not be interpreted. She further stated that even after consulting Whit Waide's "Bible" (book containing Waide's symbols), it would have been very difficult and unlikely to come up with an accurate record. She stated that a verbatim transcription of such notes could not be had. As part of the basis for her conclusion that an accurate transcription of Whit Waide's notes could not be had, she compared that portion of Waide's notes which he had transcribed and completed prior to his death with the uncompleted notes. She stated that she was unable to come up with the same or a similar representation of what those notes stood for.

The deceased reporter's notes were turned over to Clinton B. Gettig in November 1974. Mr. Gettig was a special reporter for the Federal Court in the Southern District of Texas. Mr. Gettig was never present at any time during the trial of the case, and stated he had no idea as to what actually went on in trial. Gettig along with receiving the uncompleted notes, received those pages prepared by Whit Waide prior to his death. Gettig, when questioned about such completed pages, stated:

Q Have you retained those pages?

A No, sir. When I—when I received them I thought they were from the— Either Joyce or someone else who had tried to—who had started on the job and I used them to—well, familiarizing myself at the beginning with the doctor's testimony and I think along with the pages that I redid, because of errors that I made, why, then I think everything went into the waste basket."

Gettig further stated that he actually expanded on those previous transcribed pages. His transcription was somewhat different from the transcribed pages that were prepared by the original court reporter who had died.

Mr. Gettig transcription of Whit Waide's notes were predicated in part on trying to find a flow of the testimony and then going back and picking up symbols that he had not figured out from the original notes. Gettig testified that Whit Waide had an individualized system of note taking which Gettig had never run across. Although Gettig certified that the statement of facts was a "true and accurate transcript" of all the stenotype notes that were had upon the trial, Gettig could not testify that his transcription of Whit Waide's notes was 100% accurate. He stated that there was a degree of potential inaccuracy inherent in his having to transcribe notes from a fairly individualized system that he was unaccustomed to.

The trial judge signed the statement of facts prepared by Gettig and certified the same to be a "true and correct statement" of all the facts had upon the trial of said cause. However, before signing the same and before hearing any of appellant's complaints with respect to the alleged discrepancies and omissions, in the proposed statement of facts, the following discussion between the court and defendant's attorney took place.

"THE COURT: I am not taking either counsel's words for anything that is in those notes; I am just taking Mr. Gettig's word.

Mr. McMains: All I am trying to establish judge, for the appellate record is whether or not you are relying on your own recollection or rather Mr. Gettig's and his transcription.

THE COURT: Well, now, I have read them and they appear to be reasonably accurate to me—I would say within 90 percent or more accurate as to what went on, and I am going to rely on Mr. Gettig. That is who I have a right to rely on. And that is who I am going to rely on."

At the conclusion of this statement, the trial judge left. Presumably the trial court treated appellant's hearing on his objections to the statement of facts the same as making out a bill of exceptions. The trial judge was not present and did not preside at the hearing on the alleged discrepancies and omissions.

When a difference arises as to whether the record truly discloses what occurred in the trial court, as was the case here, the matter *shall* be submitted to and settled by the trial court or judge thereof and the statement of facts be by him made to conform to the truth. Rule 377(d), T.R.C.P. It is thus the trial court's duty to hear the argument concerning the discrepancies and then to resolve the dispute in accordance with his own recollection. This he did not do.

It is a general rule that the defendant is entitled to a complete statement of facts in question and answer form, and if through no fault of his own, he is unable to procure such a statement of facts, his right to have the cause reviewed on appeal can be preserved to him in no other way than a reversal and retrial of the case. *Victory v. Hamilton,* 127 Tex. 203, 91 S.W.2d 697 (Tex. Comm'n App.1936, opinion adopted); *Goodin v. Geller,* 521 S.W.2d 158 (Tex.Civ.App. —Waco 1975, writ ref'd n. r. e.); *James Edmond, Inc. v. Schilling,* 501 S.W.2d 432 (Tex.Civ.App.—Waco 1973, no writ); *Waller v. O'Rear,* 472 S.W.2d 789 (Tex.Civ.App. —Waco 1971, writ ref'd n. r. e.); *State v. Ripke,* 426 S.W.2d 599 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.); *Pacific Greyhound Lines v. Burgess,* 118 S.W.2d 1100 (Tex.Civ.App.—Amarillo 1938, writ ref'd).

After a review of all the facts that have taken place, this Court determined that a hearing in accordance with Rule 377(d) had not taken place and that the question had not been determined whether the statement of facts did in fact conform to the truth. Whereupon this Court issued an order requiring the trial court to: 1) hold a hearing in accordance with Rule 377(d); 2) to hear all arguments with respect to the alleged discrepancies and omissions; and 3) make a determination, based solely on the trial court's recollections, whether the record, as is, or as corrected, truly discloses what occurred during the course of the trial. We instructed the trial court that: if after hearing all of the arguments with respect to the discrepancies and omissions he was unable to settle the differences based upon his own recollections, he should so report to this court; but if such differences could be settled, he should so certify and forward the record back to the Court of Civil Appeals. A copy of this order is attached as an appendix to this opinion.

Thereafter, the appellant and appellees filed a joint motion for extension of time to comply with the order which was granted on December 31, 1975. The trial court conducted the hearing with both parties' attorneys being present. The corrected statement of facts was finally certified and re-filed with the Court on January 7, 1976. The trial court held a full and fair hearing on all objections to the original statement of facts. The trial judge certified that he personally reviewed and read the statement of facts and found it to be true and correct based upon his own independent recollection of the trial and the proceedings reported in the statement of facts. Although either party to this appeal could have objected to the statement of facts as finally certified, no objections were filed with this Court. There were no motions offered to amend the statement of facts or the briefs of the parties. Appellant's points of error 6, 7 and 8 are now overruled.

We pause to take note that court reporters should have a back-up system for reporting their trials by mechanical means. The lack of such a system has caused miscarriages of justice, undue delays and added expense to the party litigants to an appeal. Court reporting, as it is now being carried out, is still operating in the "horse and buggy days". Court reporting has not kept up with modern reproducing systems. Their systems of reporting cases is just as archaic as when the district clerks reproduced the transcripts by typing each page. There is too much loss of time and accuracy in taking shorthand notes of the trial proceeding, reading from the notes to a tape recorder and then having a typist reproduce from the tape. Even typing directly from the shorthand notes wastes the valuable time of the court reporter, when a typist could be doing the same thing. A court

reporter has a much higher duty to the judicial system in seeing that the record is accurate, that the evidence is properly preserved and that the record is timely prepared for appeal in accordance with the instructions of the parties' attorneys.

In the past few years, this Court has been required to order retrials or has had to grant repeated extensions of time in order to get a correct and final statement of facts on numerous appeals. This was brought about not only by the death of at least two court reporters, but also: because of occasions when a court reporter left the State of Texas and outside the jurisdiction of this Court without first completing his records for appeal; because a court reporter's records were destroyed by a storm; because a court reporter left a state court and joined a federal court and became too busy to timely complete the record; and because of lengthy unavoidable illnesses. In addition, this Court has been required to extend the normal period of time for preparing the statement of facts because court reporters in their affidavits gave the following reasons among many others: the press of their regular duties; the need of a vacation; because other records took preference over the present appeal; and because the attorneys did not give them sufficient time to prepare the record.

Recently, one court reporter suffered a stroke, leaving three (3) records uncompleted. Last month this Court permitted a juvenile to be released on bond pending his appeal because the court reporter could not prepare the record in the time allotted and the juvenile's case could become moot before the case could be heard on appeal. In this last particular case, the court reporter required ninety (90) days (because of the press of other business) to prepare a record that only took two and one-half hours for the judge to hear.

We believe that the Legislature at its next session and/or the Commissioners Courts in the meantime (at least within this Thirteenth Supreme Judicial District) should provide the court reporters with the necessary back-up systems and typists so

that a speedy trial will not be delayed on appeal because of the lack of proper reproducing facilities for the record on appeal. In many cases, the reproduced record on a tape itself would be sufficient on appeal. At least Rule 377(c) and (e) and Rule 398, T.R.C.P. would have more meaning and could be more readily used and enforced. This in itself would save much time and expense to the litigants, the court reporters, and to the attorneys. It is the desire of this Court that no case in the future will be required to be retried, or unnecessarily delayed on appeal because the record of the proceedings could not be timely reproduced for appellate purposes. We now go to the merits of this case.

The collision made the basis of this suit occurred on October 10, 1971, on Interstate 45 between Texas City and Dickinson, Texas. Both the defendant driver, John Cliver, Jr., and the plaintiffs were proceeding in the same direction and in the same lane (right hand lane). The collision occurred during the daytime and there were no obstructions to visibility. The roadway was straight and level with no curves. The weather conditions were clear and the pavement was dry. Plaintiff, John Thomas, testified he was travelling approximately fifty (50) to fifty-five (55) miles an hour when defendant's van struck his vehicle from the rear. Plaintiff's vehicle, upon being struck from behind by defendant's vehicle, veered to the left and came to a stop in a ditch. Appellant's vehicle veered to the right and turned over off the roadway.

■ Appellant in its 9th and 10th points of error asserts that the trial court erred in rendering judgment for plaintiffs because no primary negligence issues, nor proximate cause issues, were conclusively established as a matter of law against appellant's driver, John Cliver, Jr.

While the appellant's points of error in its brief are adequate to enable this Court to determine the errors complained of, there are no assignments of error upon which they are based in either appellant's motion for new trial or its amended motion for new trial. They, therefore, cannot be considered

on this appeal. See Rule 374, T.R.C.P.; *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (Tex.Sup.1960); *Collins v. Smith,* 142 Tex. 36, 175 S.W.2d 407 (Tex.Sup.1943); *Smith v. Brock,* 514 S.W.2d 140 (Tex.Civ. App.—Texarkana 1974, no writ); *Torres v. Duaine,* 496 S.W.2d 773 (Tex.Civ.App.—Corpus Christi 1973, no writ). Appellant's points of error 9 and 10 are overruled.

There also appears another reason why appellant's points of error 9 and 10 cannot be sustained. It is undisputed that no special issue inquiring as to whether appellant's driver Cliver was negligent and whether such negligence was the proximate cause of plaintiffs' damages was requested by plaintiffs. Plaintiffs did not request that these issues be submitted nor did appellant timely object to the failure to submit the same. In response to the special issues that were submitted and that are material here, the jury found: 1) that John Thomas was entitled to recover the sum of $35,200.00 as damages for injuries resulting from the occurrence in question; and 2) that Johnnie Mae Thomas (his wife) was entitled to recover the sum of $32,950.00 as damages for injuries resulting from the occurrence in question.

■ It is generally held that when there are no objections or request concerning omitted special issues, they will be deemed found in support of the judgment if there is evidence to support such implied findings. *Kirk v. Standard Life and Accident Insurance Company,* 475 S.W.2d 570 (Tex.Sup. 1972); *Wichita Falls & Oklahoma Ry. Co. v. Pepper,* 134 Tex. 360, 135 S.W.2d 79 (Tex. Sup.1940); *Transport Insurance Company v. Mabra,* 487 S.W.2d 704 (Tex.Sup.1972); *Thywissen v. FTI Corporation,* 518 S.W.2d 947 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Vahlsing Christina Corporation v. Ryman Well Service, Inc.,* 512 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Wells v. Burns,* 480 S.W.2d 31 (Tex.Civ.App.—El Paso 1972, no writ).

This rule, however, is subject to the limitations that such implied or deemed finding may be used in support of a judgment and may be supplied if the omitted issue is referable to the other issues submitted.

■ The plaintiffs' cause of action was plead and tried on the theory of negligence and that was the only theory of recovery. We, therefore, hold that the findings of the jury as to the injuries and damages to plaintiffs were referable to the issues omitted. *Wells v. Burns,* supra; *Kirk v. Standard Life and Accident Insurance Company,* supra; *Ackerman v. Pride of West Lodge No. 12,* 217 S.W.2d 55 (Tex.Civ.App.—El Paso 1948, no writ); *Weingarten, Inc. v. Scott,* 456 S.W.2d 266 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); 3 McDonalds, Texas Civil Practice, § 12.36.5 (1970); Hodges, Special Issue Submission In Texas, § 81, p. 210.

The evidence was sufficient to base deemed findings of negligence on the part of defendant's driver and that such negligence was the proximate cause of plaintiffs' injuries.

■ Appellant in its points of error 11–14 asserts that the trial court erred in refusing to submit issues on contributory negligence. In appellant's requested issues it asks whether plaintiff operated his truck at such a slow speed as to impede the normal and reasonable movement of traffic, and whether he was driving at a slower rate of speed than a person using ordinary care would have driven. There was no request by the defendant (assuming an affirmative finding by the jury on such issues) for a finding as to whether such acts constituted negligence on the part of the plaintiff. The requested issues standing alone could not have formed the basis for a judgment for defendant without a finding that such acts on the part of the plaintiff constituted negligence. Where the requested special issues are one of a series of interdependent issues, all of which are essential to complete submission of an independent ground of defense not otherwise included in the charge, it is necessary that issues be requested on all of the essential controverted elements. See *Hill v. W. E. Brittain, Inc.,* 405 S.W.2d 803, 811 (Tex.Civ.

App.—Fort Worth 1966, no writ); *Yellow Cab Company v. Smith,* 381 S.W.2d 197 (Tex.Civ.App.—Waco 1964, writ ref'd n. r. e.) and cases cited therein. *Crain v. West Texas Utilities Co.,* 218 S.W.2d 512 (Tex. Civ.App.—Eastland 1949, writ ref'd n. r. e.); 3 McDonalds, Texas Civil Practice, § 12.33.2 (1970); *Kelley v. Goodrum,* 378 S.W.2d 935 (Tex.Civ.App.—Houston [1st Dist.] 1964, no writ); *Lee v. Howard,* 483 S.W.2d 922 (Tex. Civ.App.—Eastland 1972, writ ref'd n. r. e.). We hold that defendant's requested submission of plaintiff's contributory negligence was not in substantially correct form. Rule 279, T.R.C.P. In addition, we have reviewed all of the evidence and find that there is no competent evidence to support the submission of these issues, or that plaintiff's speed had anything to do with the failure of appellant's driver to see plaintiff's vehicle in time to avoid running into it. Appellant's points of error 11 through 14 are overruled.

▬ Appellant next complains of the damages awarded by the jury to plaintiffs. The appellant asserts that the court erred in admitting testimony relative to the reasonableness and the necessity of the hospital and medical expenses incurred by plaintiffs, and that there was no evidence to support the submission of the special issues. The jury found in response to the special issues that: the past reasonable and necessary expenses for medical and hospital care received by John Thomas was $950.00; and the past reasonable necessary expenses for medical and hospital care received by Johnnie Mae Thomas was $950.00.

With respect to Mr. Thomas, the record shows that subsequent to the accident, he spent ten (10) days in the hospital at which time the final diagnosis was stated to be cervical whiplash and a sprained back. While he was in the hospital, Mr. Thomas received therapy, traction and medication as well as other forms of treatment. Thomas' hospital charges were $396.00. Professional services which included the ten days care in the hospital by Dr. W. J. Minor plus seventeen office visits came to a total

of $375.00 making the total past medical and hospital expenses for him $771.00.

Mrs. Johnnie Mae Thomas also spent ten (10) days in the hospital. Her final diagnosis was stated to be a cervical whiplash, sprained back, sprained left hip, sprained knees and multiple arthritis. While in the hospital, Mrs. Thomas also received physical therapy, traction and medication. Mrs. Thomas' hospital charges amounted to $522.70, along with radiologist charges of $45.00. Professional services which included the ten days care by Dr. Minor while she was in the hospital along with seventeen office visits amounted to $375.00 making her total medical and hospital expenses $942.70.

Dr. Cannon, who was shown to be a thoroughly qualified physician, testified that in connection with the above charges, to both Mr. and Mrs. Thomas, such were both reasonable and necessary expenses. These points of error are overruled.

▬ Next, appellant complains of the amount of the jury's award for the future medical and hospital care that both plaintiffs would require. The award of future medical expenses is a matter about which no precise evidence is required, it being a matter particularly for the jury, and one upon which the jury may make its award based upon the nature of the injuries, the medical care rendered before the trial, and the condition of the injured party. *City of Houston v. Moore,* 389 S.W.2d 545 (Tex.Civ. App.—Houston 1965, writ ref'd n. r. e.); *Edens-Birch Lumber Co. v. Wood,* 139 S.W.2d 881 (Tex.Civ.App.—Beaumont 1940, dism'd judg. corr.).

Dr. Cannon stated that each of the Thomas' would require future medical care and treatment. He testified that on the average, each of them would have about four (4) major attacks per year due to their injuries and that each would require medical supervision, medication for the limitation of activity, physical therapy and possible orthopedic appliances. Dr. Cannon assigned an estimated value of cost for each of those episodes at approximately $150.00, or about $500.00 per annum. The evidence also

showed that, based upon the insurance life expectancy tables, John Thomas had a life expectancy of six (6) years and that his wife, Johnnie Mae Thomas, had a life expectancy of around eight (8) years.

 Appellant asserts that in view of such testimony, the maximum figure for John Thomas' future medical expenses was $3,000.00 (6 years × $500.00) and that the maximum amount for Johnnie Mae Thomas' future medical expenses was $4,000.00 (8 years × $500.00). The jury awarded John Thomas $5,250.00 and $7,000.00 for Johnnie Mae Thomas. Appellant asserts that such award was clearly excessive and unjust so as to reflect bias and prejudice on the part of the jury. It should be noted that Dr. Cannon was testifying with respect to only averages in stating he expected plaintiffs to have four attacks each year. He put no limitation as to the number of attacks which they may have. They could have been more or less. Life expectancy tables are based on averages and such are not binding on the jury. *Greyhound Lines, Inc. v. Craig,* 430 S.W.2d 573 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.). The testimony of Dr. Cannon as to the estimated cost and average number of attacks that each plaintiff might expect to occur is nothing more than expert opinion. The rule is well settled that this character of testimony is but evidentiary, and is never binding upon the trier of facts. The trier of facts are not cut off from exercising considerable personal judgment as to how far such opinions are to be relied on. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.Sup.1970); *Broussard v. Moon,* 431 S.W.2d 534 (Tex.Sup.1968); *Main Bank & Trust v. York,* 498 S.W.2d 953 (Tex.Civ.App. —San Antonio 1973, writ ref'd n. r. e.). The jury, viewing the condition of each plaintiff, may have believed that the plaintiffs would live longer than the number of years such tables project. The jury was also at liberty to consider the possibility that the plaintiffs could have had more than four attacks per year, together with the increased cost of medical care. Therefore, after viewing all the evidence, we find that there was sufficient evidence to support the jury's answers to issues 3 and 4 and such were not so manifestly excessive and unjust as to require the court to grant a remittitur.

Appellant in its points of error numbers 23–26 asserts that there is insufficient evidence to support the jury's answers to special issues 5 and 6 and that such answers were manifestly excessive and unjust as to reflect bias and prejudice on the part of the jury. Appellant with respect to these points, offers a brief statement to the effect that it was clear that the amount of damages fixed by the jury were not the result of deliberate and conscientious conviction, but were so excessive as to shock one's sense of justice, citing *Bluebonnett Express, Inc. v. Foreman,* 431 S.W.2d 45 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ), this being the only argument and authority on these points.

 In determining whether a verdict is "excessive", the courts must review only that evidence favorable to the award, and the findings of the jury thereon will not be disturbed on the ground of "excessive" if there is any evidence to sustain the award. *Hammond v. Stricklend,* 498 S.W.2d 356 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Monsanto Company v. Milam,* 480 S.W.2d 259 (Tex.Civ.App.—Houston [14th Dist.] 1972), aff'd 494 S.W.2d 534 (Tex.Sup.1973); *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). It is immaterial that the courts might have awarded a lesser sum as fact finders, but there must be some indication of bias or prejudice. In the absence of an affirmative showing of bias or prejudice, the Courts of Civil Appeals will give every intendment to the evidence that supports the verdict. *Hammond v. Stricklend* supra (and cases cited therein); *Sunset Brick & Tile, Inc. v. Miles,* supra. See also *World Oil Co. v. Hicks,* 103 S.W.2d 962 (Tex.Comm'n App.— 1937, opinion adopted); *City of Houston v. Jean,* 517 S.W.2d 596 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.); *J. C. Penney Company v. Duran,* 479 S.W.2d 374 (Tex.Civ.App.—San Antonio 1972, writ

ref'd n. r. e.); *Bluebonnet Express, Inc. v. Foreman,* 431 S.W.2d 45 (Tex.Civ.App.— Houston [14th Dist.] 1968, no writ). The mere fact that the verdict is large is not conclusive that it is the result of passion, prejudice, sympathy or other consideration not found in the evidence. *Hammond v. Stricklend,* supra; *Union Transports, Inc. v. Braun,* 318 S.W.2d 927 (Tex.Civ.App.— Eastland 1958, no writ).

■ The measure of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its other facts and considerable discretion and latitude must necessarily be vested in the jury. *Rosenblum v. Bloom,* 492 S.W.2d 321 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.); *Houser v. Sunshine Laundries and Dry Cleaning Corporation,* 438 S.W.2d 117 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.). See also *Missouri Pacific Railroad Co. v. Miller,* 426´S.W.2d 569 (Tex.Civ.App.—San Antonio 1968, no writ); *Monsanto Company v. Milam,* supra; and see *Boddy v. Canteau,* 441 S.W.2d 906 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); *Bluebonnet Express, Inc. v. Foreman,* supra. It was, therefore, appellant's burden to affirmatively show that the jury's verdict was improperly motivated by passion, prejudice or bias so as to shock the conscience of this Court. This, they failed to do.

■ We have reviewed all of the evidence and find nothing in the record to show bias, prejudice or other improper motive on the part of the jury that would warrant disturbing the verdict in this case. We have considered the award of the jury as to each plaintiff as it concerns their injuries and damages. The amount awarded by the jury in each particular is supported by the evidence and does not offend the conscience of this Court. We, therefore, decline to substitute our judgment for that of the jury. See *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710 (Tex.Sup.1943); *Dallas Consolidated Electric St. Ry. Co. v. Motwiller,* 101 Tex. 515, 109 S.W. 918 (Tex. Sup.1908); *Sunset Brick & Tile, Inc. v. Miles,* supra.

We have reviewed the entire record in its corrected and now unobjected form. We have carefully considered all of appellant's points of error which are overruled. The judgment of the trial court is, therefore, accordingly affirmed.

AFFIRMED.

### APPENDIX

PRELIMINARY OPINION AND ORDER

PER CURIAM.

Appellant in its appeal to this Court has presented three of its points of error directed at contesting the sufficiency of the appellate record caused by the death of the court reporter after the appeal on the merits had been perfected. After several attempts, a statement of facts was finally prepared and certified as being true and accurate by the substitute court reporter. Appellant asserts that the statement of facts as filed does not purport to be an accurate statement of facts and the trial court erred in failing to properly certify the same and, therefore, it is entitled to a reversal of the entire case and a remand and retrial of the cause.

An appellant in a case on appeal is entitled to a statement of facts. When only a substantially correct statement of facts is presented for review, it is not sufficient when objected to. This is especially true when a "no evidence" point is presented. See *Englander Co. v. Kennedy,* 428 S.W.2d 806 (Tex.Sup.1968).

The appellant Southwestern Bell Telephone Company has used due diligence to obtain a statement of facts. After the statement of facts had been prepared, the appellant objected to certain portions of the proposed statement of facts, and asserted that there were numerous omissions and inaccuracies therein. Appellant contends that it does not present an accurate statement of facts for appellate review.

When differences arise as to whether the record truly discloses what occurred in the trial court, as was the case here, the matter *shall* be submitted to and settled by the

trial judge thereof and the statement of facts be by him made to conform to the truth. Rule 377(d), T.R.C.P. It is thus the trial court's duty to hear the argument concerning the discrepancies and then to resolve the dispute in accordance with his own recollections, if possible.

If the trial court, upon being presented with the controversy, can and does so resolve the controversy (by relying upon his own recollections), then the statement of facts would be sufficient for our review either with or without objections to the trial court rulings. However, if after such controversy has been submitted and heard and the trial court is unable, from its own recollections, to settle and resolve the differences, a sufficient statement of facts would not be present for appellate review. The appellant would then be entitled to a new trial. See *State v. Ripke,* 426 S.W.2d 599 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.).

In the case at bar, appellant filed two motions to extend the time to file the proposed statement of facts. Both motions showed good cause and were granted. The first motion, filed on January 20, 1975, was granted with the time extended to February 20, 1975. The second, filed on February 19, 1975, was also granted which extended the time to March 27, 1975. On March 27, 1975, the record was finally prepared and filed in this Court.

Prior to the filing of the record in this Court on March 19, 1975, a hearing was held before the trial court pursuant to Rule 377(d), T.R.C.P., for the purpose of having the trial judge settle the differences as to the accuracy of the statement of facts. However, at the hearing, the trial judge refused to hear arguments with respect to the discrepancies and omissions in the statement of facts as presented by counsel. Instead the trial judge signed the statement of facts prepared by Mr. Gettig, the third court reporter, certifying the same to be a true and correct statement of all the facts had upon the trial of said cause. However, before signing the same and before hearing any of appellant's complaints with respect

to the alleged discrepancies and omissions, the trial court qualified his certification by stating that he was relying only upon Mr. Gettig and his interpretation and transcription of the proposed statement of facts. The trial judge stated that the statement of facts appeared to be reasonably accurate, "within 90 percent or more accurate as to what went on". This does not comply with the mandate of Rule 377(d) which says that the discrepancies " . . . shall be submitted to and settled by the trial court or judge thereof and the statement of facts be by him made to conform to the truth." Thus, the differences existing with regard to the proposed statement of facts were not resolved and settled by the trial court in conformity with Rule 377(d), T.R.C.P.

If anything material to either party is omitted from the statement of facts or should it become apparent even after a case has been submitted to a Court of Civil Appeals, the appellate court may on its own initiative set aside the submission and make such orders as may be necessary to secure a satisfactory record. Rule 428 and Rule 429, T.R.C.P. This may save the time and expense of a new trial for this reason alone. It, therefore, appears to this Court that the statement of facts has not been properly prepared in accordance with the rule. Rule 377(d).

Since it is within our explicit as well as our inherent power to make such orders as are necessary to secure a satisfactory record and submission of a case, we transmit the statement of facts to the clerk of the trial court and order the trial judge to conduct a hearing in accordance with Rule 377(d), T.R.C.P. with respect to the alleged discrepancies and omissions. The attorneys shall furnish substitute copies of the lost or omitted exhibits for the trial judge's consideration. The trial judge shall then make its determination based solely upon his recollection, settling the differences that occurred in the trial court, so that the statement of facts be by him made to conform to the truth.

If the trial judge after hearing all arguments with respect to discrepancies and

omissions is unable to settle the differences based upon his own recollections, that portion of the record which he is unable to certify shall be noted by him and certified by the clerk of the trial court and forwarded back to the Court of Civil Appeals.

The trial court shall have 30 days from the date of this order to comply with this order and opinion. Additional time will be granted upon motion showing good cause. After receipt of the record and upon examination of the trial court's certification, this Court will then enter such additional orders relative to rebriefing and further oral arguments as it deems necessary.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

Appellant in his Sixth Assignment of Error stated that "this Court's express direction that *no further briefing would be entertained . . .*" is incorrect. In our order to the trial court, we stated "after receipt of the record and upon re-examination of the trial court's certification, this Court will then enter such additional orders relative to rebriefing and further oral arguments as it deems necessary." No request was made by the appellant to amend his brief or to rebrief. Therefore, rebriefing was not deemed to be necessary.

Nor did this Court hold as appellant contends that its points of error in connection with the statement of facts were waived due to their failure to object to the recertification of the statement of facts. After the statement of facts was recertified by the trial court under order of this Court and filed in this Court, we considered all of the evidence in the statement of facts as recertified. See new Rule 434, T.R.C.P.

All of appellant's points of error on motion for rehearing have been carefully considered and they are overruled.