**In the Matter of I. A., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1503.**

Court of Civil Appeals of Texas, Corpus Christi

Aug. 30, 1979.

Rodolfo R. Munoz, Kingsville, for appellant.

George J. Filley, III, Kingsville, for appellee.

## OPINION

NYE, Chief Justice.

Appellant, I. A., seeks a reversal of a judgment of the Juvenile Court of Kleberg County declaring him to be a delinquent and committing him to the custody of the Texas Youth Council. The adjudication of delinquency is based upon jury findings that appellant engaged in delinquent conduct by committing the felony offense of burglary.

On August 14, 1978, Perry's Variety Store in Kingsville was burglarized. Almost one month later, Kleberg County Probation Officer, Mario Salazer, acting upon information he had received pursuant to the police investigation, took I. A. into custody. After informing the juvenile's mother of his whereabouts, Salazar drove I. A. to the Kingsville police station for questioning, arriving at 9:00 a. m. Shortly thereafter, Sergeant Vidal, a police officer, began to question the suspect. Captain Gomez testified that sometime thereafter he was informed that I. A. wanted Captain Gomez to conduct the interrogation. Gomez then took I. A. into his office at approximately 9:40 a. m. where he gave the "Miranda warnings" before commencing his interrogation. Gomez testified in substance that I. A. wanted to make a statement, and that he (Gomez) typed the statement as he and the juvenile talked. After I. A. had been at the police station for about three hours, Justice of the Peace, Keith Bray, was summoned to the police station shortly before noon to give the statutory warnings required by Section 51.09(b) of the Texas Family Code. I. A. remained at the police station until sometime between 1:00 and 1:30 p. m. when he was then taken alone to the magistrate's office where he signed the typed statement in the presence of Judge Bray. He was subsequently formally charged with intentionally entering a building, not then open to the public, with the intent to commit theft in violation of Section 30.02 of the Texas Penal Code (1974).

On November 14, 1978, an adjudication hearing was held before a jury. During the hearing, I. A.'s written statement was entered into evidence.[1] During the course of the hearing the jury heard the testimony of: 1) the investigative police officers; 2) the Justice of the Peace, Bray; 3) the juvenile who originated the burglary; and 4) I. A., himself. At the conclusion of the hearing the jury found that the juvenile had engaged in delinquent conduct. The juvenile court conducted a disposition hearing and then entered an order committing appellant to the Texas Youth Council until he reaches the age of eighteen.

Approximately one and a half months before the adjudication hearing, I. A.'s attorney filed a request to have a court reporter present to record all of the proceedings to be held in the cause. An official court reporter, however, was not present during the various hearings. Instead, all of the court proceedings (from voir dire through the disposition proceedings) were recorded on cassette tapes. The record before us includes: 1) a transcript which includes all of the pleadings and the exhibits which were introduced into evidence, including I. A.'s written statement; 2) a partial statement of facts which was transcribed from the tape recordings; and 3) cassette tapes which are the actual tape recordings made of the entire case. Rule 380, T.R.C.P., insures an indigent appellant the right to obtain a free statement of facts. While the rule requires the official court reporter to prepare a narrative statement of facts, we have previously noted that no reporter was present. Nevertheless, the County Judge ordered the tapes to be transcribed by county personnel.

1. According to the statement, another juvenile had already broken into Perry's through the air conditioning unit on the roof. This juvenile later came to get I. A. and another friend to return with him to Perry's for the purpose of removing more merchandise from the store. All three juveniles then returned to the store and, while I. A. and his friend waited outside on the roof watching for policemen, the juvenile who had originally broken into Perry's re-entered the store and started throwing additional merchandise out to them. The statement indicated that neither I. A. nor his friend "touched any of the stuff" and that the original juvenile took all of the merchandise and hid it at a relative's home.

Although the transcribed statement of facts contains most of the pertinent testimony, we find there is at least one substantial gap, obviously caused by temporary recording problems. Virtually all of the testimony of two crucial witnesses, the appellant, and the juvenile who originally burglarized the store, has been transcribed with notations that the answers of these particular witnesses were inaudible for the most part. For instance the typewritten record states in part:

"Q. What happened?

A. ([I. A.] answers this question. I (typist) cannot understand what he is saying. He is not speaking loud enough.)."

We have listened to the tapes from which the statement of facts was transcribed and, even with high amplification, we are also unable to hear any of the testimony of these two juveniles which we deem to be crucial testimony. The testimony of the adult witnesses, for the most part, was sufficiently loud that most of their testimony was recorded and transcribed, even though several gaps with "inaudible notations" are apparent in the testimony of the adults as well.

The appellant's points of error require us to examine the entire record. Although the parties agreed (with our prior approval), that the tape recordings could be sent to this Court along with the typewritten record for review, the appellant did not agree that the typed record as such was complete or accurate. Usually the appellant raises points of error (as here), that require a full and complete statement of facts of the adjudication proceedings for proper appellate review. We have held many times that an appellant is entitled to a complete statement of facts (where requested) and without one, his case must be reversed and remanded. See *Ramon v. Chavira*, 586 S.W.2d 594 (Tex.Civ.App.—Corpus Christi 1979), and authorities cited therein.

Notwithstanding the above, we believe that electronic recording devices will and should play an important role in courtroom proceedings in the future. Nothing could be more accurate where proper recordings were made. We specifically note that current rules expressly authorize non-stenographic recording of depositions to be introduced into evidence during trials when certain notice requirements have been met. See Rule 215c, T.R.C.P. This Court has specifically discussed the difficulties for litigants and the court system caused by the lack of an alternative means to preserve trial testimony and has suggested the use of proper recording equipment as a back-up system to alleviate such difficulties. See *Southwestern Bell Telephone v. Thomas*, 535 S.W.2d 686 (Tex.Civ.App.—Corpus Christi 1976), rev'd on other grounds, 554 S.W.2d 692 (Tex.Sup.1977). In small rural counties particularly, testimony in cases such as these could be preserved for transcription and appeal by the proper use of good tape recording equipment and with adequate supervision. By agreement of the parties, transcription of that portion of the record needed on appeal could be typed and authenticated at a tremendous savings (overall) of manpower, time and money. In like cases the parties should designate for transcription only such specified portions of the recordings that are pertinent to the appeal. See Rules 375, 377(a), (b), (e) and 378, T.R.C.P.

The appellant has raised some serious objections to the validity of the procedure that was used to obtain I. A.'s written confession. See Tex.Family Code, § 51.-09(b) (Supp.1979). We are unable to resolve these and other questions because of the lack of audible testimony concerning the issues before the trial court.

REVERSED AND REMANDED.