**KELLER INDUSTRIES, INC., et al., Appellants,**

v.

**O.O. REEVES, et ux., Appellees.**

No. 13647.

Court of Appeals of Texas, Austin.

July 20, 1983.

Rehearing Denied Sept. 7, 1983.

George B. Butts, Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellants.

Tommy Jacks, Lloyd Doggett, Doggett & Jacks, Austin, for appellees.

Before SHANNON, POWERS and GAMMAGE, JJ.

GAMMAGE, Justice.

This is an appeal from a judgment for personal injuries under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Supp.1982) (hereafter DTPA), by which appellees were awarded $212,900 actual damages, trebled to $638,700, and $97,037 attorneys' fees. Under the judgment, certain credits, based upon the extent of appellate review pursued by appellants, are allowed against the attorneys' fees. We will affirm the judgment of the trial court.

In April, 1979, Keller Industries, Inc. (hereafter Keller) manufactured a six-foot aluminum stepladder which was purchased by Lilyan Kalar Reeves from Gibson Products Company of Austin, Inc. (hereafter Gibson), on June 9, 1979. On August 5, 1979, the ladder failed while being used by O.O. Reeves, resulting in his severe injury. The Reeves' filed suit against both Keller and Gibson alleging causes of action under the doctrine of strict liability in tort and violations of §§ 17.46(b)(5), (7) of the DTPA, which ultimately resulted in the judgment recited above.

Appellants bring eight points of error, arguing that the trial court improperly applied the DTPA in trebling damages and awarding attorneys' fees; that appellants are entitled to have the judgment reversed and the cause remanded because they were unable to obtain a complete statement of facts; that there was no evidence or insufficient evidence to support the jury's answer to Special Issue No. 10(d), which served as a partial basis for the trial court's judgment; that there was insufficient evidence to support the jury's answer to Special Issue No. 10(b), which served as a partial basis for the trial court's judgment; that the trial court improperly failed to submit a special issue inquiring whether O.O. Reeves relied on representations made to him by appellants because reliance is a necessary element of appellees' cause of action; that the trial court improperly awarded attorneys' fees to appellees for work done preparatory to, and during, an earlier mistrial of this case because the mistrial resulted from a change in theory on the part of an expert witness of appellees; and that the trial court improperly admitted two exhibits into evidence because no proper predicate was laid for their admission.

The following provisions of the DTPA, including 1977 amendments, are applicable to the case at bar:

§ 17.44 *Construction and Application*

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

§ 17.46 *Deceptive Trade Practices Unlawful*

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

\*     \*     \*     \*     \*     \*

(5) representing that goods or services have sponsorship, approval, *characteristics,* ingredients, *uses, benefits,* or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

\* \* \* \* \* \*

(7) representing that goods or services are of a particular *standard, quality, or grade,* or that goods are of a particular style or model, if they are of another; . . . .

§ *17.50. Relief for Consumers*

(a) A consumer may maintain an action if he has been *adversely affected* by any of the following:

(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter; . . . .

\* \* \* \* \* \*

(b) In a suit filed under this section, *each consumer who prevails may obtain:*

(1) *three times* the amount of *actual damages* plus court costs *and attorneys' fees* reasonable in relation to the amount of work expended; . . . .

\* \* \* \* \* \*

*17.50A. Damages: Defenses*

In an action brought under Section 17.-50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the defendant:

(1) proves that the action complained of resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid the error; . . . .

[emphasis added]

▆▆▆ Appellants' first point of error, arguing that these provisions of the DTPA were improperly applied in this case, is apparently grounded upon a theory that a set of facts which give rise to a cause of action in strict liability for a defective product cannot also be the subject of a cause of action under the DTPA. Their argument

makes extensive references to the legislative history of the DTPA and quotes at length testimony of nonlegislator proponents of the original legislation as a purported basis for determining what the legislature intended.

Both the application of the DTPA to personal injury cases and the question of legislative intent as determined by legislative history were addressed in the recent case of *Litton Industrial Products, Inc. v. Gammage,* 644 S.W.2d 170 (Tex.App.1982, writ granted on other points), as follows:

It is a fundamental principle of statutory construction that the courts only look behind the law as to legislative intent and public policy where the statute is unclear, uncertain or ambiguous. [citation omitted]. If there is no ambiguity, the statute itself is the public policy. We are of the opinion that the DTPA is clear and unambiguous and, therefore, it is not necessary to consider legislative intent beyond that expressly stated in the statute itself. . . .

The DTPA clearly states that all actual damages are to be trebled, regardless of whether they are personal injury or property damages. Upon our review of the applicable legislative history, we found that the purpose of the DTPA was to deter that behavior expressly prohibited by the DTPA. It would be totally illogical to conclude that the prohibited practices are better deterred by trebling property damage awards than by trebling personal injury awards. We can only, in all reasonableness, conclude that it is in keeping with the deterrent function of the DTPA to treble personal injury damages when the proper circumstances warrant it. . . .

644 S.W.2d at 175, 176.

Other cases either holding or recognizing that the DTPA applies to actions for personal injuries include: *Hurst v. Sears, Roebuck & Company,* 647 S.W.2d 249 (Tex.1983) (Supreme Court recognized trebling of damages for physical pain and suffering under the DTPA, reversing on other grounds);

*Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980) (Supreme Court impliedly recognized that a personal injury action under the DTPA is appropriate while holding against a recovery for mental anguish under the DTPA where those damages were not otherwise recoverable at common law); *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977) (Supreme Court recognized trebling of damages for mental anguish under the DTPA); *Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (directly affirmed awarding of treble damages for personal injuries under the DTPA); *Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815 (Tex.App.1982, writ ref'd n.r.e.) (recognized awarding of treble damages under the DTPA for medical expenses, physical pain, mental anguish and property damage).

Appellants' first point of error is overruled.

Appellants' second point of error, that they are unable to obtain a complete statement of facts and are therefore entitled to have the judgment reversed and the cause remanded as a matter of law, is also without merit.

Missing from the statement of facts in this appeal are bench conferences containing arguments and objections concerning the admissiblity of testimony of certain of appellees' witnesses and exhibits. In the record is an affidavit of the court reporter stating that she was unable to hear all of what ·was said during these bench conferences because of noise from an air hammer being operated just outside the courtroom. The affidavit further states that the reporter was not requested to transcribe the first of these bench conferences and it was covered only by her tape recorder. While counsel for appellants did request the reporter to take stenographic notes on all subsequent bench conferences, she advised both court and counsel that she was having difficulty hearing all that was said due to the noise interference from the air hammer.

Objections made during some of these bench conferences were referred to in a non-specific manner during objections to the testimony of these and other witnesses later in the trial. The court reporter, however, was unable to provide an accurate verbatim transcription of the complete arguments and objections made during the bench conferences which served as the basis for the subsequent non-specific objections.

■ It is well settled that an appellant who is unable to obtain a proper record of the evidence is entitled to a new trial where his right to have the cause reviewed on appeal cannot be preserved in any other way. *Gilbert v. Singleton,* 611 S.W.2d 163 (Tex.Civ.App.1981, no writ).

■ In determining whether this right can otherwise be preserved, this Court has long recognized the options offered by Rules 377 and 378, Tex.R.Civ.P.Ann. (1967):

> Even though an appellant has not waived the unavailability of the statement of facts, he is not entitled to reversal on that ground unless he shows that he was deprived of a statement of facts through no fault or negligence of his own and that he *attempted without success* to obtain a condensed statement in narrative form under Tex.R.Civ.P. 377 or an agreed statement under Tex.R.Civ.P. 378. [emphasis added]

*Phillips v. Phillips,* 532 S.W.2d 161, 163 (Tex.Civ.App.1976, no writ).

The subject of an agreed statement is not limited to testimony. *Gilbert v. Singleton, supra.*

■ Appellants have shown no such attempt to preserve their right to the missing portions of the statement of facts in this case, even though by their very nature these portions lend themselves to re-creation much more readily than would the testimony of a witness.

Appellants' second point of error is overruled.

By their next two points of error, appellants argue that there was no evidence, or that the evidence was insufficient, to support the jury's answer to Special Issue No.

10(d), finding $92,500 for loss of future earning capacity by O.O. Reeves.

■ In considering a no evidence point of error, this Court must review the evidence in its most favorable light, considering only the evidence and inferences which support the finding and rejecting all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974). As appellants recognize in their brief, under a no evidence point of error the question is whether there is *some* evidence to support the verdict and judgment. *See Schaefer v. Texas Employers Insurance Association,* 612 S.W.2d 199 (Tex.1981).

■ In considering an argument of insufficient evidence, an appellate court is obliged to weigh all of the evidence in a case and to set aside the verdict and remand the cause for a new trial only if it concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Review of the evidence in this case discloses the following:

1. At the time of the accident, O.O. Reeves was a draftsman for Texas Instruments, where he had been employed for approximately 14 years.

2. Prior to his injuries his job performance was rated as outstanding and he was recommended by his supervisor for promotion from his hourly wage position, "non-exempt 78", to a salaried position, "exempt 27."

3. The promotion was based on his pre-injury job performance, but went into effect on a date subsequent to the injuries.

4. After returning to work he was unable, due to his injuries, to perform at the same level of quality or to produce the same volume of work rendered prior to his accident.

5. At the time of trial, his job performance was actually at a lower level of job classification, grade 74.

6. He would "probably" be retained in the grade 78 job classification until a subsequent evaluation period, when he would then be demoted to grade 74.

7. Medical evidence from treating physicians indicated that no treatment could cure O.O. Reeves' injuries completely and there was a reasonable probability that he had sustained a permanent physical impairment of 20%–40% in his right wrist and 12%–30% in his left wrist.

8. There is a reasonable probability that he will develop severe arthritic problems and consequent pain because of his injuries, which could become incapacitating.

9. It is medically advisable for him to avoid activities, job-related or otherwise, which place stress on his wrists.

10. Medical restrictions on heavy lifting related to design work would have to be removed in order to avoid demotion to job grade 74.

11. O.O. Reeves had definite opportunities for job advancement which were probably lost due to his injuries.

12. Having lost his promotion to job grade 27, if O.O. Reeves was able to retain his grade 78 position, his future lost earnings would be $50,610 (discounted to $45,174) at age 70 or $33,740 (discounted to $30,680) at age 65.

13. If he was demoted to grade 74, his future lost earnings would be $162,000 (discounted to $138,802) at age 70 or $108,000 (discounted to $92,415) at age 65.

The recited evidence is clearly sufficient to support the jury's answer to Special Issue No. 10(d), finding $92,500 for loss of future earning capacity by O.O. Reeves. Furthermore, reviewing the record as a whole, we do not find the verdict so against the great weight and preponderance of the evidence as to be manifestly unjust.

Appellants' third and fourth points of error are overruled.

■ By their fifth point of error, appellants complain that there was insufficient evidence to support the jury's award of $6,500 for future medical care. This question is governed by the rule of *Powell*

v. *Underbrink*, 499 S.W.2d 206, 211 (Tex. Civ.App.1973, no writ), which states that "[i]n order to recover for future medical expenses, a plaintiff must show a reasonable probability that such expenses will be necessary in the future." A jury which has heard expert testimony on future medical expenses may choose to be guided by such evidence but is not bound by it. *See Hughett v. Dwyre*, 624 S.W.2d 401 (Tex.App. 1981, writ ref'd n.r.e.); *Southwestern Bell Tel. Co. v. Thomas*, 535 S.W.2d 686 (Tex. Civ.App.1976), rev'd on other grounds, 554 S.W.2d 672 (Tex.1977). In reviewing the factual sufficiency of the evidence to support the jury finding, we must examine the entire record to determine whether, in light of all the evidence, the finding is manifestly unjust. *In re King's Estate, supra*, 244 S.W.2d 661–662.

██ The record reveals medical evidence that O.O. Reeves had undergone several surgical procedures at the time of trial—a DeQuervains release, an osteotomy of the distal radius, and a Darrach's procedure. These procedures had only been performed on the right wrist. Medical testimony further indicated that even under the best of circumstances, Mr. Reeves would require follow-up office visits and possible therapy and medication. Testimony was to the effect that, if a good result was had on the right wrist and Mr. Reeves continued to have difficulty on the left, the next step would be a Darrach and osteotomy for the left wrist. If there was not a good result on the right side, a more drastic procedure, fusion, was probably suggested for both wrists.

The clear import of this testimony is that there is a reasonable probability that O.O. Reeves will require future surgical procedures and follow-up care of a type at least as involved and expensive as that which he had already undergone and about which evidence was presented at trial. In view of this prognosis, and after reviewing the entire record, we conclude that the jury's finding was not manifestly unjust.

Appellants' fifth point of error is overruled.

██ In their sixth point of error, appellants contend that the trial court erred in not submitting a special issue on "reliance" to the jury. Appellants base this contention on a number of cases, in none of which does a Texas appellate court hold that "reliance" is required to be submitted as a predicate to recovery under the DTPA.

Although reliance may be an element of common-law fraud, our Supreme Court has stated that the DTPA does not represent a codification of the common law. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980).

Furthermore, at the time this suit arose, § 17.50 required only that a damaged consumer show himself to have been "adversely affected" by a violation of the DTPA in order to recover.

It should also be pointed out that many of the *per se* violations of the DTPA set out in § 17.46(b) are not the types of conduct upon which reliance is possible. As one commentary contends:

> Since reliance is impossible in certain sections of the Act, a reliance requirement should not be added in those sections of the Act where reliance may be possible.

Bragg, Maxwell & Longley, Texas Consumer Litigation, § 8.03 (1978 ed.).

The special issues submitted by the trial court in this case were couched in the language of the "producing cause" terminology incorporated into the DTPA during its extensive revision in 1979, and which was defined by the court for the jury as "an efficient, exciting, or contributing cause, which, in a natural sequence, produced injury or damages complained of, if any."

While there was testimony indicating, and the jury may have believed, that appellees' reliance on the 250 lb. duty-rating given on a label affixed to the ladder was part of the series of events culminating in the injuries to O.O. Reeves, it was not error for the trial court to submit the issues as worded. Tex.R.Civ.P.Ann. 277 (1976).

Appellants' sixth point of error is overruled.

In their seventh point of error, appellants complain that the trial court erred in awarding attorneys' fees for work done preparatory to and during a mistrial preceding the trial of this cause which is now on appeal. Appellants argue that, as a matter of law, appellees should not be allowed to recover attorneys' fees for work done in connection with the earlier trial of this case because the mistrial resulted from a change in theory of appellees' expert witness regarding the cause of the ladder's failure. Appellants cite no authority for this contention.

■ It is well settled that "[a]llowance of attorney's fees rests in the sound discretion of the trial court and its judgment will not be reversed in the absence of a showing of an abuse of that discretion." *Magids v. Dorman,* 430 S.W.2d 910, 912 (Tex.Civ.App.1968, writ ref'd n.r.e.). As stated in *Reintsma v. Greater Austin Apartment Association,* 549 S.W.2d 434 (Tex.Civ.App.1977, writ dism'd):

> This Court has authority, in looking at the entire record to determine whether an award of attorney's fees is excessive, to draw on the common knowledge of the justices of the Court and their experience as lawyers and judges, and to view the matter in the light of the testimony, the record, and the amount in controversy.

549 S.W.2d at 437.

■ Having applied the above standard in our review of the record, we do not find that the award of attorneys' fees in this case was excessive.

Furthermore, attorneys' fees in the case before us are the subject of a written stipulation, signed and filed of record, a type of agreement made enforceable by Tex.R.Civ. P.Ann. 11 (1979). Paragraph number six of the stipulation reads: "Defendants will not contest the reasonableness or the necessity of this legal work being required for proper presentation of Plaintiff's case. . . ." It now appears that appellants are doing on appeal precisely what they agreed not to do at trial.

■ A stipulation constitutes a contract between the parties and between the parties and the court. *First Nat. Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 142 (Tex.Civ.App.1979, writ ref'd n.r.e.). As a general rule, such contracts are binding on the parties. *Amoco Prod. Co. v. Texas Elec. Serv. Co.,* 614 S.W.2d 194, 196 (Tex.Civ.App. 1981, no writ).

Appellants' seventh point of error is overruled.

■ Appellants' contend in their eighth point of error that the trial court erred in allowing admission of exhibits nos. 46 and 47, two Keller ladders purchased by appellees' counsel from a Homer's store in Houston. The ladders had several rivets missing and appellees' counsel testified that "[f]rom the time that those ladders were taken by us from the Homer's store, until the time they were brought into this courtroom, they had not been used or climbed on."

Appellants argue that the proper predicate for the admission of these ladders must refer and relate to the condition of the ladders at the time they left the Keller factory. We agree. Appellants further contend that there was no evidence offered on this question. We disagree. Appellees elicited testimony from Keller's plant manager on the condition of exhibit no. 46, a ten-foot ladder. The witness, after examining the ladder, testified that there were rivets which had not been squeezed or even riveted at all, which "may have" happened at the plant, and that some diagonal braces had two holes in them, something which "would have" happened when the ladder left the Keller plant. A similar discussion occurred in reference to exhibit no. 47, a five-foot ladder.

Earlier in the trial other evidence of essentially the same nature was admitted, without objection, regarding similar defects in other new Keller stepladders. Consequently, any objection to exhibits nos. 46 and 47 on this basis was waived. *Hundere v. Tracy & Cook,* 494 S.W.2d 257 (Tex.Civ. App.1973, writ ref'd n.r.e.). Furthermore, because this evidence was merely cumula-

tive, any error in admitting it was harmless. *See* Tex.R.Civ.P.Ann. 434 (Supp.1983).

Appellants' eighth point of error is overruled.

Accordingly, for the reasons stated herein, the judgment of the trial court is in all things affirmed.