

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-11-00437-CV

| | | |
|---|---|---|
| Fire Insurance Exchange | § | From the 17th District Court |
| | § | of Tarrant County (17-224686-07) |
| v. | § | January 31, 2013 |
| Judy Kennedy | § | Opinion by Justice Walker |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellant Fire Insurance Exchange shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Sue Walker



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00437-CV

FIRE INSURANCE EXCHANGE                                          APPELLANT

V.

JUDY KENNEDY                                                     APPELLEE

----------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury returned a verdict for Appellee Judy Kennedy on her claims against her homeowner's insurance carrier, Appellant Fire Insurance Exchange. The trial court entered judgment on the jury's verdict and FIE perfected this appeal. For the reasons set forth below, we will affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to Judy's suit are as follows. Judy testified that she awoke very early on October 10, 2006, to discover water pouring from her ceiling; it was running from a light can and an air conditioning vent. She soon realized that the water was coming from the upstairs bathroom of her home; when she made her way upstairs, the water both downstairs and upstairs was over her feet. The water was dark brown. Judy called her FIE agent and made a claim under her policy with FIE, and she called a plumber. The plumber put in a new commode, and that remedied the leak.

Jennifer Ramirez, the FIE adjuster assigned to Judy's claim, called Judy later that morning and told her that FIE would send someone out to extract the water. Judy suggested that a friend of hers was in the business and could do the water extraction work; Jennifer declined and said Judy had to use FIE's people. Jennifer said that FIE had a vendor and would send someone out. FIE contacted a local "emergency preferred vendor" of water mitigation services named ServiceMaster and sent them to Judy's home that day.

Judy was not satisfied with FIE's handling of her claim, and eventually she filed suit against FIE; she alleged causes of action directly against FIE for its conduct and also alleged that ServiceMaster was FIE's apparent agent and that FIE was liable for any negligence of ServiceMaster under the doctrine of respondeat superior. The case proceeded to a jury trial, and the jury found for Judy and against FIE on Judy's breach of contract claim, her DTPA claim, and

3

her breach of the duty of fair dealing claim. The jury also made attorneys' fees findings for Judy.[2] The jury found that ServiceMaster was the apparent agent of FIE but that ServiceMaster was not negligent. After the trial court entered judgment on the jury's verdict, FIE brought this appeal, raising eleven issues.

### III. NO ABUSE OF DISCRETION IN SUBMISSION OF JURY QUESTIONS 10 AND 11

FIE's second through fifth issues raise various challenges to the submission of questions 10 and 11 in the court's charge.[3] Question 10 asked whether ServiceMaster was the apparent agent of FIE. The jury answered, "Yes." Question 11 was conditioned on a "yes" answer to question 10 and asked whether any negligence of ServiceMaster as apparent agent of FIE proximately caused the occurrence in question. The jury answered, "No." Accordingly, because the jury answered "no" to question 11, it did not reach question 12, submitting damages from any negligence of ServiceMaster. FIE's sixth issue complains that FIE is somehow erroneously being held responsible for ServiceMaster's negligence.

---

[2]A copy of the jury's verdict is attached hereto as Appendix A.

[3]FIE's first issue complains that "[t]here is no evidence, or insufficient evidence, that non-party ServiceMaster was Appellant's apparent agent" as the jury found in question 10. But the jury found in question 11 that ServiceMaster was not negligent, so—as discussed later in this memorandum opinion—the judgment against FIE does not impose any liability on FIE as a result of the jury's apparent agency finding. Because the jury's answer to question 10, even if not supported by legally and factually sufficient evidence, did not, in light of its "no" answer to question 11, cause rendition of an improper judgment, we need not address FIE's first issue. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to final disposition of an appeal).

4

We review a trial court's submission of jury questions under an abuse-of-discretion standard. *See Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.—El Paso 2005, no pet.). The trial court must submit a requested question to the jury if the pleadings and any evidence support it. Tex. R. Civ. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

Judy pleaded that ServiceMaster was FIE's apparent agent and that ServiceMaster (and FIE) were negligent. The record before us contains some evidence supporting the submission of question 10 asking whether ServiceMaster was FIE's apparent agent and some evidence supporting the submission of question 11 asking whether ServiceMaster was negligent.[4] Moreover, as pointed out by Judy, even if submission of questions 10 and 11 could be considered erroneous, any error was harmless because the jury answered question 11 in FIE's favor, finding that ServiceMaster was not negligent. *See, e.g.*, *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) ("Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial.");

---

[4]For example, Judy testified that FIE sent ServiceMaster to her home; that FIE told her she had to use ServiceMaster; and that ServiceMaster reported directly to FIE not to her. Judy's FIE claims adjuster, Jennifer Ramirez, testified that she called ServiceMaster within an hour of receiving Judy's claim; that she was taught in training to call ServiceMaster; that she has never called any other company; that ServiceMaster was an emergency preferred vendor (EPV) for FIE; that FIE has employees who work as EPV coordinators and communicate with the EPVs; and that EPVs submit estimates to the FIE EPV coordinators who either approve or disapprove them.

5

*Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980) (holding that the potentially erroneous submission of defensive theories was harmless error because the jury found for the defendant on independent grounds and the complaining party failed to show how it probably resulted in an improper verdict). Because the pleadings and some evidence supported submission of jury questions 10 and 11, we hold that the trial court did not abuse its discretion by submitting them; and because, in any event, any error in the submission of questions 10 and 11 was harmless in light of the jury's answer to question 11, we overrule FIE's issues two through five.

In its sixth issue and in its reply brief, FIE argues that despite jury's "no" answer to question 11, asking whether ServiceMaster was negligent, the error in submitting questions 10 and 11 cannot be considered harmless here. FIE contends that the jury could have "worked backwards" by erroneously utilizing the definition of "occurrence in question" that was provided in conditionally-submitted question 11 when it answered question 10. According to FIE, the jury could have substituted question 11's definition of "occurrence in question" in place of question 10's use of the undefined phrase "occasion in question" to thereby somehow attribute ServiceMaster's conduct (even though the jury did not find ServiceMaster negligent) to FIE in the preceding questions concerning FIE's liability. But the jury was specifically instructed not to answer question 11 unless it had already answered question 10; unless the record demonstrates otherwise, we must presume that the jury followed the instructions given in the charge. *See*

6

*Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 861–62 (Tex. 2009). There is nothing in the record supporting FIE's contention that the jury worked backwards—first deliberating on question 11, which was conditionally submitted based on a prior "yes" answer to question 10; then using a definition of a term in question 11 as a substitute for an undefined, different term in question 10; and then somehow using its apparent agency answer in question 10 to work backwards and answer other questions (contained earlier in the charge prior to question 10) concerning FIE's liability (even though those questions asked specifically about FIE's conduct) to erroneously affirmatively answer the prior liability questions against FIE. We overrule FIE's sixth issue.

## IV. COVERED DAMAGES WERE SEGREGATED BY EVIDENCE, BY CHARGE INSTRUCTIONS, AND BY UNCHALLENGED JURY FINDING

In its ninth issue, FIE argues that Judy "failed to segregate her covered damages from her non-covered damages under the Doctrine of Concurrent Causation." In its tenth issue, FIE argues that the trial court erred by denying FIE's no-evidence motion for summary judgment and its motion for directed verdict—both asserting that no evidence existed that the damages or problems caused by ServiceMaster's substandard remediation efforts were covered damages under Judy's homeowner's policy.

Under the doctrine of concurrent causation, where covered and noncovered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril. *Travelers*

7

*Indemnity Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied). The doctrine of concurrent causation is not an affirmative defense or an avoidance issue; rather, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy. *Wallis*, 2 S.W.3d at 303.

Although FIE contends that Judy failed to segregate covered damages from uncovered damages, question 2 of the court's charge authorized the jury to award damages only for a covered peril, and FIE fails to challenge on appeal the legal or factual sufficiency of the evidence to support the jury's finding in response to question 2 that the repair costs to Judy's residence was $42,000. The jury was instructed in connection with question 2 that "repair costs" "means reasonable and necessary costs of repair to the residence, *caused solely by a covered peril*, with material of like kind and quality, with proper deduction for depreciation." [Emphasis added.] Judy's expert, Herschel Postert, who has been employed as a multi-lines claims adjuster for twenty-four years, used a software program called Xactimate that is used by FIE and other insurers to estimate losses and calculated that the cost to repair Judy's home from the water damage was $51,930. In closing argument, Judy's attorney asked the jury to deduct $4,800 from Postert's $51,930 figure for mold damages included in that total; the jury awarded $42,000. Judy asked the jury to also award $150,000 for the additional damages to her home resulting from the negligence of

8

ServiceMaster, but the jury declined to find ServiceMaster negligent. Thus, the jury specifically awarded $42,000 in damages to Judy as a result of damages caused solely by a covered peril. FIE does not challenge the legal or factual sufficiency of the evidence to support the jury's finding that $42,000 was the cost to repair Judy's home for damages caused by a covered peril. And the evidence, including Postert's testimony, supports this finding. Thus, this unchallenged finding is binding upon us on appeal. *See, e.g.*, *Bedford v. Moore*, 166 S.W.3d 454, 466 (Tex. App.—Fort Worth 2005, no pet.) (Cayce, C.J., concurring) (stating that an unchallenged jury finding is binding on appellants); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied) (same); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (unchallenged finding of fact is binding on appellants).

We overrule FIE's ninth issue contending that Judy failed to segregate covered damages from uncovered damages. We overrule FIE's tenth issue complaining of the trial court's failure to grant a no-evidence motion for summary judgment and a directed verdict on this basis, to the extent FIE's tenth issue presents anything for our review.

### V. SUFFICIENT EVIDENCE EXISTS SUPPORTING JURY FINDING THAT FIE BREACHED ITS CONTRACT WITH JUDY

In its eighth issue, FIE asserts that the evidence is legally and factually insufficient to support the jury's finding that FIE failed to comply with the insurance policy. Judy's homeowner's insurance policy with FIE required FIE to

9

indemnify Judy for the losses caused by sudden and accidental discharge of water. Judy testified extensively concerning the damage to her home from the sudden and accidental discharge of water from her upstairs toilet on October 10, 2006. She explained that dark brown water "was pouring" through the ceiling, from a light can and an air conditioner vent. Using a diagram of her home, Judy described the damage to the upstairs bathroom, to her office, to a bedroom, and to the downstairs living room. Judy testified concerning furniture that was ruined because of the water discharge, specifically a desk and a sectional couch. She testified that her carpet was ruined. Judy said that immediately after the damage, she obtained an estimate from Carpet One for the replacement of her carpet for $14,477.30.[5] She testified that the wallpaper was peeling off the wall in the bathroom where the leak occurred. Judy explained that in the rooms adjacent to the bathroom where the leak occurred, she could see water soaked into the walls; "the sheetrock was soaking it up." When asked how she knew that the water was soaking into the walls, Judy said that she knew because her FIE adjuster had pointed it out to her. Immediately after the damage, Judy obtained an estimate to have the wallpaper and border in the bathroom pulled down and to have new wallpaper installed, and the estimate, including the cost of new wallpaper, was $3,000.[6] Judy explained that her FIE adjuster came to her home

---

[5]Judy forwarded this estimate to FIE and it was in FIE's claims file.

[6]Judy forwarded this estimate to FIE and it was in FIE's claims file.

10

and saw all of this damage. On cross-examination, Judy identified buckling in her living room ceiling that "existed at the time of the claim" and a large brown water stain on her ceiling. In response to Judy's claim on her FIE homeowner's policy, FIE paid ServiceMaster $1,299.46 to place fans and a dehumidifier in Judy's home to dry out the carpet, to replace portions of the carpet pad, and to put the same carpet back down. FIE also issued Judy several checks totaling about $1,000 for the remainder of the damage to her home and personal property.

The jury found in response to question 1 that FIE had failed to comply with the insurance policy; the jury was instructed in question 1 that FIE "is not required to pay for any damages that are not attributable solely to a peril covered under its policy." We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless

11

a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Considering the evidence favorable to the jury's finding that FIE failed to comply with its contract with Judy because a reasonable factfinder could and disregarding any contrary evidence because a reasonable factfinder could, the evidence is legally sufficient to support the jury's finding that FIE breached its contract with Judy. And considering and weighing all evidence in the record, the evidence that FIE breached its contract with Judy is not so weak or the contrary evidence so overwhelming that the jury's finding should be set aside, so the evidence is factually sufficient to support the jury's finding that FIE breached its contract with Judy. *See, e.g.*, *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406 (Tex. 2011) (dealing with insured's suit against insurer for breach of contract by underpayment of claim); *State Farm Lloyds v. Fitzgerald*, No. 03-99-00177-CV, 2000 WL 1125217, at *5 (Tex. App.—Austin Aug. 10,

12

2000, no pet.) (not designated for publication) (upholding jury verdict against insurer on homeowner's policy claim based on breach of contract by underpaying claim for costs of repair).  We overrule FIE's eighth issue.[7]

## VI. FIE WAIVED SEGREGATION OBJECTION; SUFFICIENT EVIDENCE EXISTS SUPPORTING JURY'S VERDICT ON JUDY'S ATTORNEYS' FEES

In its eleventh issue, FIE claims that the evidence is legally or factually insufficient to prove that Judy's reasonable attorneys' fees through the time of trial were $129,320.  FIE's sole challenges to the sufficiency of the evidence are its contention that Judy failed to segregate her fees between fees incurred in prosecuting Judy's breach of contract claim, which are recoverable, and fees incurred in prosecuting Judy's extra-contractual claims, which are not recoverable, and its contention that fees incurred in connection with a prior trial in the case that ended in a mistrial are not recoverable.

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310

---

[7]In light of our disposition of FIE's eighth and ninth issues, we need not separately address FIE's seventh issue, asserting that "[t]he trial court erred in entering a judgment against [FIE], because the insurance policy does not cover damages arising out of a service vendor's failure to perform its contractual duties."  That is, as set forth above in connection with FIE's eighth issue, judgment was entered against FIE on the jury's legally and factually sufficient finding that *FIE* breached its contract with Judy; the judgment against FIE was not based on any breach of contract by ServiceMaster, and as set forth in connection with FIE's ninth issue, the damages awarded by the jury do not include any damages for an uncovered peril.  Thus, our disposition of FIE's eighth and ninth issues likewise dispose of FIE's seventh issue.  We overrule FIE's seventh issue.

(Tex. 2006). If any attorney's fees relate solely to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Id.* at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. But, if no objection is made to a failure to segregate attorney's fees either at the time evidence of attorney's fees is presented or to the jury charge, the error is waived. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988); *Morales v. Rice*, No. 08-10-00318-CV, 2012 WL 2499004, at *6 (Tex. App.—El Paso June 29, 2012, no pet. h.); *Wagner v. Edlund*, 229 S.W.3d 870, 875 (Tex. App.—Dallas 2007, pet. denied); *Cullins v. Foster*, 171 S.W.3d 521, 535–36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see also Ogden v. Ryals*, No. 14-10-01052-CV, 2012 WL 3016856, at *4 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.).

FIE did not object to Judy's expert testimony on attorneys' fees. FIE did not object to question 9, the attorneys' fees question, which did not require the jury to segregate fees. FIE did not object to the admission of Judy's exhibit showing the tasks performed and the time spent by her attorneys in prosecuting her case against FIE. And FIE did not raise the segregation issue in any postverdict motion. Because FIE failed to raise its segregation complaint in any way in the trial court, it has waived its segregation complaint on appeal. *See, e.g., Green Int'l, Inc.*, 951 S.W.2d at 389; *Hruska*, 747 S.W.2d at 785; *Morales*,

14

2012 WL 2499004, at *6; *see also* Tex. R. App. P. 33.1(a)(1)(A) (requiring party, to preserve a complaint for appellate review, to present to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

FIE cites no authority for the proposition that the attorneys' fees Judy incurred in this case as a result of the first trial that ended in a mistrial are not recoverable. The law appears to be to the contrary. *See Keller Indus., Inc. v. Reeves*, 656 S.W.2d 221, 228 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (rejecting the appellant's argument that the trial court erred by awarding attorneys' fees "for work done preparatory to and during a mistrial preceding the trial of this cause which is now on appeal"). And, again, FIE failed to raise any complaint in the trial court that the jury should not consider the fees Judy incurred when the first trial of this case ended in a mistrial. *See* Tex. R. App. P. 33.1(a)(1)(A). Thus, we hold that FIE waived this complaint on appeal.

We overrule FIE's eleventh issue.

15

## VII. CONCLUSION

Having overruled FIE's second through eleventh issues and having determined that we need not address FIE's first issue, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED: January 31, 2013

NO. 17-224686-07

| | | |
|---|---|---|
| JUDY KENNEDY | § | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | TARRANT COUNTY, TEXAS |
| FIRE INSURANCE EXCHANGE | §<br>§ | 17TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your cell phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

1.    Do not let bias, prejudice, or sympathy play any part in your decision.

2.    Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

Copy mailed to each Pro Se
And Attorney of Record
4-20-11 Springer, Boyd,
Boy,

Court's Minutes
Transaction #180    Received
June 16, 2011
at 4:16pm

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

2

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

Deposition testimony is testimony which has been previously taken under oath. You are instructed that such testimony is entitled to be given the same weight you would give it if it were presented by a witness appearing in the courtroom during trial.

As to any question to which an objection has been sustained, you must not speculate as to what the answer might have been or as to the reason for the objection. You must not consider for any purpose any offer of evidence which was rejected or any evidence that was stricken out by the Court. Such matters are to be treated as though you had never known them.

3

656

<u>QUESTION NO. 1:</u>

Did Fire Insurance Exchange fail to comply with the insurance policy?

You are instructed that Fire Insurance Exchange is not required to pay for any damages that are not attributable solely to a peril covered under its policy.

    Answer "Yes" or "No."

    Answer: ___YES___

4

**657**

If your answer to Question No. 1 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 2:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Judy Kennedy for her repair costs, if any, that resulted from the failure to comply?

"Repair costs" means reasonable and necessary costs of repair to the residence, caused solely by a covered peril, with material of like kind and quality, with proper deduction for depreciation.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any.

Answer: $ _42,000.00_

5

658

If your answer to Question No. 1 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3:

Did Fire Insurance Exchange engage in any unfair or deceptive act or practice that caused damages to Judy Kennedy?

"Unfair or deceptive act or practice" means any of the following:

(1) Misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue, or

(2) Making any misrepresentation relating to insurance policy by -

    a. making any untrue statement of a material fact; or

    b. failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made; or

    c. making any statement in such a manner as to mislead a reasonably prudent person to false conclusion of a material fact.

(3) Failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim when the insurer's liability has become reasonably clear, or

You are instructed that an "insurer's liability has become reasonably clear" when the insured's liability to the claimant in the underlying case is reasonably clear and the claimant's settlement demand to the insured is such that an ordinarily prudent insurer would accept it.

(4) Refusing to pay a claim without conducting a reasonable investigation of the claim.

Answer "Yes" or "No."

Answer: _YES_

6

659

22

If your answer to Question No. 3 is "Yes," then answer the following question. Otherwise, do not answer the following question

## QUESTION NO. 4:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Judy Kennedy for her repair costs, if any, that were caused by such unfair or deceptive act or practice?

"Repair costs" means reasonable and necessary costs of repair to the residence, caused solely by a covered peril, with material of like kind and quality, with proper deduction for depreciation.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any.

Answer: $ 42,000.00

7

If your answer to Question No. 3 is "Yes," then answer the following question. Otherwise, do not answer the following question.

QUESTION NO. 5:

Did Fire Insurance Exchange engage in any such conduct knowingly?

"Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found resulted in damages to Judy Kennedy.

Answer "Yes" or "No."

Answer: ___YES___

8

661

If your answer to Question No. 5 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 6:

What sum of money, if any, in addition to actual damages, should be awarded to Judy Kennedy against Fire Insurance Exchange because Fire Insurance Exchange's conduct was committed knowingly?

"Additional damages" means an amount that you may, in your discretion, award as a penalty or by way of punishment.

Factors to consider in awarding additional damages, if any, are:

a.     Nature of the wrong.

b.     The character of the conduct involved.

c.     The degree of culpability of Fire Insurance Exchange.

d.     The situations and sensibilities of the parties concerned.

e.     The extent to which such conduct offends a public sense of justice and propriety.

f.     The net worth of Fire Insurance Exchange.

Answer in dollars and cents, if any.

Answer: $ 42,000.00

9

61

If your answer to Question No. 1 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 7:

Did Fire Insurance Exchange fail to comply with its duty of good faith and fair dealing to Judy Kennedy?

An insurer fails to comply with its duty of good faith and fair dealing by –

Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear, or

Refusing to pay a claim without conducting a reasonable investigation of the claim.

Answer "Yes" or "No."

Answer: __YES__

10

66

If your answer to Question No. 7 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Judy Kennedy for her damages, if any, exclusive of repair costs, that were proximately caused by such conduct?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"Repair costs" means reasonable and necessary costs of repair to the residence, caused solely by a covered peril, with material of like kind and quality, with proper deduction for depreciation.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any.

Answer: $ _10,000.00_

11

66

27

<u>QUESTION NO. 9:</u>

What is a reasonable fee for the necessary services of Judy Kennedy's attorneys in this case, stated in dollars and cents?

Factors to consider in determining a reasonable fee include –

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.

2. The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved and the results obtained.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the lawyer or lawyers performing the services.

8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a. For representation in the trial court.

Answer: $ _129,320.00_

b. For representation through appeal to the court of appeals.

Answer: $ _20,000.00_

c. For representation at the petition for review stage in the Supreme Court of Texas.

Answer: $ _10,000.00_

d. For representation at the merits briefing stage in the Supreme Court of Texas.

Answer: $ _10,000.00_

12

**665**

e. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer: $ 5,000.00

13

## QUESTION NO. 10:

Do you find that on the occasion in question, ServiceMaster was the apparent agent of Fire Insurance Exchange?

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to her detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

Answer "Yes" or "No."

Answer: _YES_

14

**667**

Only If your answer to Question No. 10 was "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 11:

Did the negligence, if any, of Service Master as apparent agent of Fire Insurance Exchange proximately cause the occurrence in question?

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"Occurrence in question" means the failure to properly mitigate the water loss at Judy Kennedy's house.

Answer "Yes" or "No."

Answer: _No_

15

668

Only If your answer to Question No. 11 was "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 12:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Judy Kennedy for her damages, if any, that were proximately caused by such conduct.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any.

Answer: $_____

16

669

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

If 11 jurors agree on every answer, those 11 jurors sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

17

**670**

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as Presiding Juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

MELODY WILKINSON
JUDGE PRESIDING

671